LAW OFFICES OF THOMAS W. FALVEY
THOMAS W. FALVEY (SBN 65744)
MICHAEL H. BOYAMIAN (SBN 256107)
ARMAND R. KIZIRIAN (SBN 293992)
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone:  (818) 547-5200
Facsimile:   (818) 500-9307
E-mail:       thomaswfalvey@gmail.com,
               mike.falveylaw@gmail.com
               armand.falveylaw@gmail.com

HARTOUNIAN LAW FIRM
ALEX HARTOUNIAN, SBN 252210
418 N. Fair Oaks Ave., Suite 202
Pasadena, California 91103
Telephone:  (818) 794-9675
Facsimile:   (818) 459-6997
E-mail:       alex@h-lf.com

Attorneys for Plaintiff JENNIFER PAE,
individually and on behalf of all others similarly situated.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PAE, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>FOX RESTAURANT CONCEPTS, LLC d/b/a TRUE FOOD KITCHEN; a Arizona limited liability company; FRC TRUE FOOD SMP, LLC, a California limited liability company; FRC TRUE FOOD SDFV, LLC, a California limited liability company; FRC TRUE FOOD NBFI, LLC, a California limited liability company; and DOES 1 through 25, inclusive,<br><br>                              Defendants. | CASE NO.  2:16-cv-06965-DSF-FFM<br><br>*[Assigned to the Hon. Dale S. Fischer, Courtroom 7D]*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>**[Filed concurrently with Plaintiff's Compendium of Evidence; [Proposed] Order]**<br><br>Hearing Date:    October 30, 2017<br>Time:              1:30 p.m.<br>Courtroom:       7D<br><br>Complaint Filed: July 22, 2016<br>Removal Date: September 16, 2016 |

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO DEFENDANTS FOX RESTAURANT CONCEPTS, LLC, FRC TRUE FOOD SMP, LLC, FRC TRUE FOOD SDFV, LLC, FRC TRUE FOOD NBFI, LLC, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, October 30, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7D, in the above-captioned court, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Dale S. Fischer, Plaintiff Jennifer Pae will move, and hereby does move, for an order:

(1)     Certifying this case as a class action pursuant to the Fed. R. Civ. Proc. Rule 23(a) and (b)(3) on behalf of the following class:

> All current and former Servers, Bartenders, and Hostesses who were employed by Defendants at the True Food Kitchen ("TFK") restaurants located at 395 Santa Monica Pl, Suite 172, Santa Monica, CA 90401 ("TFK Santa Monica"), 7007 Friars Rd., Suite 394, San Diego, CA 92108 (TFK San Diego), 451 Newport Center Drive, Newport Beach, CA 92660 ("TFK Newport Beach") since July 22, 2012 to the present.

Plaintiff seeks certification of the above class with respect to the following claims from the Complaint: (1) Unpaid Wages (California Labor Code §§ 216, 1194); (2) Failure to Pay Minimum Wage (Labor Code § 1194 et seq); (3) Failure to Pay Overtime Compensation (Labor Code §510); (4) Failure to Furnish Accurate Wage Statements (Labor Code § 226); (5) Waiting Time Penalties (Labor Code §§201-203); (6) Failure to Provide Meal & Rest Periods (Labor Code §§ 226.7, 512); (7) Indemnification (Labor Code §§ 2800 and 2802); and (8) Unfair Competition (California Business and Professions Code § 17200 *et seq.*);

In the alternative, Plaintiff seeks to certify the following classes:

////

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

(1) <u>Unpaid Wages Class:</u>   Plaintiff and all other persons who were employed by Defendants as Servers, Bartenders, and/or Front Desk Hosts/Hostesses at Defendants True Food Kitchen restaurant locations in Santa Monica, Newport Beach, and San Diego, at any time from July 22, 2012, and continuing to the present.

(2) <u>Untimely Wages Class:</u> Plaintiff and all other persons who were employed by Defendants as Servers, Bartenders, and/or Front Desk Hosts/Hostesses at Defendants True Food Kitchen restaurant locations in Santa Monica, Newport Beach, and San Diego, at any time from July 22, 2012, and continuing to the present.

(3) <u>Minimum Wages Class:</u>   Plaintiff and all other persons who were employed by Defendants as Servers, Bartenders, and/or Front Desk Hosts/Hostesses at Defendants True Food Kitchen restaurant locations in Santa Monica, Newport Beach, and San Diego, at any time from July 22, 2012, and continuing to the present.

(4) <u>Inaccurate Wage Statement Class:</u>   Plaintiff and all other persons who were employed by Defendants as Servers, Bartenders, and/or Front Desk Hosts/Hostesses at Defendants True Food Kitchen restaurant locations in Santa Monica, Newport Beach, and San Diego, at any time from July 22, 2012, and continuing to the present.

(5) <u>Meal Period Class:</u> Plaintiff and all other persons who were employed by Defendants as Servers, Bartenders, and/or Front Desk Hosts/Hostesses at Defendants True Food Kitchen restaurant locations in Santa Monica, Newport Beach, and San Diego, at any time from July 22, 2012, and continuing to the present.

(6) <u>Rest Period Class:</u> Plaintiff and all other persons who were employed by Defendants as Servers, Bartenders, and/or Front Desk

2
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1    Hosts/Hostesses at Defendants True Food Kitchen restaurant

2    locations in Santa Monica, Newport Beach, and San Diego, at any

3    time from July 22, 2012, and continuing to the present.

4    (7)    <u>Unreimbursed Business Expenses</u>: Plaintiff and all other persons who

5    were employed by Defendants as Servers, Bartenders, and/or Front

6    Desk Hosts/Hostesses at Defendants True Food Kitchen restaurant

7    locations in Santa Monica, Newport Beach, and San Diego, at any

8    time from July 22, 2012, and continuing to the present.

9    In furtherance thereof, Plaintiff requests the Court enter Its Order:

10    (1)    Certifying Plaintiff Jennifer Pae as representative of the class; and

11    (2)    Appointing the Law Offices of Thomas W. Falvey and Hartounian

12    Law Firm as class counsel.

13    The Motion for Class Certification is based on this Notice, the

14    Memorandum of Points and Authorities, the Compendium of Evidence[1], on all

15    records and pleadings on file in this action, and on such evidence and argument as

16    may be presented at the hearing.

17    This motion is made following the conference of counsel pursuant to L.R.

18    7-3 which took place on September 20 and September 21, 2017.

19

20    Dated: September 28, 2017        LAW OFFICES OF THOMAS W. FALVEY

21                                    HARTOUNIAN LAW FIRM

22                                    By: /s/ Michael H. Boyamian

23                                    MICHAEL H. BOYAMIAN
                                      Counsel for Plaintiff JENNIFER PAE for
24                                    herself and other members of the general
                                      public similarly situated.
25

26
_____
27

28    [1]All declarations and exhibits cited in this brief are contained in the
      Compendium of Evidence filed concurrently herewith.

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.   STATEMENT OF COMMON FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4         A.    Overview of Defendants' Operations . . . . . . . . . . . . . . . . . . . . . . . . 2

5         B.    Plaintiff and the Class She Seeks to Represent . . . . . . . . . . . . . . . . 5

6         C.    Class Members Are Trained and Instructed To

7               Deliver Exceptional Service To Patrons At The

8               Cost of Violating Mandated Meal and Rest Breaks. . . . . . . . . . . . . . 8

9         D.    Class Members Routinely Work After Their Regularly

10              Scheduled Hours Completing Side Work For Which

11              They Are Not Paid. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12        F.    "Cashing-Out" Takes Place After The Scheduled Shift

13              And Off-The-Clock Following Completion of Side

14              Work Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15        G.    Class Members Incur Necessary Business Expenditures

16              For Which They Are Not Reimbursed . . . . . . . . . . . . . . . . . . . . . . . . 12

17  III.  ARGUMENT:   PLAINTIFF'S PROPOSED CLASS MEETS THE

18        REQUIREMENTS FOR CLASS CERTIFICATION. . . . . . . . . . . . . . . . . 13

19        A.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20        B.    The Proposed Class Satisfies The Numerosity Requirement. . . . . . . 13

21        C.    The Proposed Class Satisfies The Commonality Requirement . . . . . 14

22        D.    Plaintiff Satisfies the Typicality Requirement of Rule 23(a)(3). . . . 16

23        E.    The Representative Plaintiff and Plaintiff's Counsel will Fairly and

24              Adequately Protect the Interests of the Class.. . . . . . . . . . . . . . . . . . 17

25              1.    Plaintiff Is An Adequate Representative. . . . . . . . . . . . . . . . . 18

26              2.    Class Counsels' Experience Satisfies Rule 23(a)(4). . . . . . . . 19

27        F.    Class Certification is Proper Under Rule 23(b)(3). . . . . . . . . . . . . . . 19

28

i
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1

1.   Common Questions of Law and Fact Predominate. . . . . . . . . 19

2.   Failure to Pay All Wages Earned, Failure to Pay Minimum

Wage, Failure to Pay Overtime Wages. . . . . . . . . . . . . . . . . 21

3.   Failure to Provide Meal and Rest Periods. . . . . . . . . . . . . . . 23

4.   Failure to Reimburse Necessary Business Expenditures. . . . .23

5.   Unfair Competition Claims. . . . . . . . . . . . . . . . . . . . . . . . . . 24

6.   Derivative Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

G.   Class Treatment is Superior. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.   CONCLUSION: CLASS CERTIFICATION SHOULD BE GRANTED. . 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

## CASES

*Adoma v. University of Phoenix, Inc.*,
  270 F.R.D. 543 (E.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*
  2009 WL 249888 (S.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680, 687 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Armenta v. Osmose, Inc.*,
  135 Cal.App.4th 314 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cal-Tech Communic., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal.4th 162 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Cervantez v. Celestica Corp.*,
  253 F.R.D. 562 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cook v. Rockwell Intl Corp.*,
  151 F.R.D. 378, (D. Colo. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cortez v. Purolator Airfiltration Prod. Co.*,
  23 Cal.4th 163 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Dilts v. Penske Logistics, LLC*,
  267 F.R.D. 625 (S.D. Cal. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Elliot v. Spherion Pacific Work, LLC*,
  572 F. Supp. 2d 1169 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Guaranty Insurance Agency Corp. v. Mid-Continental Realty Co.*,
  57 F.R.D. 555 (N.D. Ill. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 17

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

*Hernandez v. Mendoza*,
    199 Cal.App.3d 72 (1988)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hudgins v. Neiman Marcus Grp., Inc.*,
    34 Cal.App.4th 1109 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In Re Activision Sec. Litig.*,
    621 F.Supp. 415 (N.D. Cal. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Live Concert Antitrust Litigation*,
    247 F.R.D. 98 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jaimez v. DAIOHS USA, Inc.*,
    181 Cal. App. 4th 1286 (2010)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*McLaughlin v. Seto*,
    850 F.2d 586 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Morillion v. Royal Packing Co.*,
    22 Cal.4th 575 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

*O'Connor v. Boeing North American, Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ochoa v. McDonald's Corp.*,
    2016 U.S. Dist. LEXIS 88323 (N.D. Cal. July 7, 2016)... . . . . . . . . . . . . . 24

*Pina v. Con-way Freight, Inc.*,
    2012 WL 1278301 (N.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Perez v. United States Dist. Court, Tacoma*,
    749 F.3d 849 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Stanton v. Boeing Co.*,
    327 F.3d 938 (9th Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Steinhebel v. Los Angeles Times Commc 'ns*,
    126 Cal. App. 4th 696, 712 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Thomas & Thomas Rodmakers v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Valentino v. Carter-Wallace*,
    97 F.3d 1227 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

iv

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

**STATUTES**

California Labor Code.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Rules of Civil Procedure, Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHER AUTHORITIES**

Federal Practice and Procedure: Civil 3d, § 1778.. . . . . . . . . . . . . . . . . . . . . . 20

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# I. INTRODUCTION

This matter is ideally suited for class treatment.  It presents a straightforward case centering around the failure of Defendants Fox Restaurant Concepts, LLC d/b/a True Food Kitchen, FRC True Food SMP, LLC, FRC True Food SDFV, LLC, FRC True Food NBFI, LLC (collectively "Defendants" or "True Food Kitchen") to pay restaurant workers for all hours worked and failure to provide statutory mandated breaks.  These claims are all predicated upon Defendants' corporate policies, procedures and practices - official and unofficial - applied uniformly to each Server, Bartender, and Hostess that worked out of True Food Kitchen's restaurant locations in Santa Monica, Newport, and San Diego.

Class members are hourly, non-exempt front of the house employees who were consistently expected to work off-the-clock in order to complete their responsibilities.  Class members also routinely clocked out for meal breaks only to continue working by servicing Defendants' patrons and guests.  Class members were also not provided with mandated rest breaks.  Class members likewise were not reimbursed for necessary business expenditures incurred while working for Defendants.

Plaintiff is representative of the Class Members she seeks to represent.  Her testimony about True Food Kitchen's pervasive practices and policies of disregarding California wage and hour laws mirrors the experiences shared by others.  Indeed, other current and former employees of True Food Kitchen, whether Hostesses, Servers, or Bartenders, echo the same complaints and also corroborate the practices they encountered in which Defendants cheated them out of breaks and their rightfully owed wages.

Courts have found that the presence of these types of policies and practices to result in class certification.  This case is no different.  The uniformity of these wrongful practices proves these claims must be certified.

---

1

## II.   STATEMENT OF COMMON FACTS

### A.   *Overview of Defendants' Operations*

Defendants operate restaurants located throughout California.  True Food Kitchen is a fictitious business name ("DBA") of Fox Restaurant Concepts, LLC ("Fox Restaurants").  Presently, in California alone, Defendants have True Food Kitchen restaurants in Walnut Creek, Palo Alto, El Segundo, Pasadena, Santa Monica, San Diego, and Newport Beach.[2]

At the time of Plaintiff Jennifer Pae's ("Plaintiff" or "Ms. Pae") employment with True Food Kitchen, Defendants operated only three restaurants: Santa Monica, Newport, and San Diego.  Class certification is being sought for only those three original restaurant locations during Ms. Pae's tenure with Defendants. The potential class consists of Servers, Bartenders, and Front Desk Host/Hostesses (hereinafter "Class Members"), all of whom are hourly, non-exempt employees.[3]

True Food Kitchen opened its first restaurant in California in 2006.  The hierarchical management structure at the True Food Kitchen restaurant typically consists of a General Manager, an Executive Chef, an Assistant General Manager, Executive Sous Chef, 2 to 4 restaurant managers, and 2 to 4 four Sous Chefs.[4]

True Food Kitchen's practices at its Santa Monica, Newport, and San Diego restaurants are standardized.  As part of this case, Plaintiff undertook the depositions of Defendants' Chief People Officer (Alain Ane) and General Manager for the Santa Monica restaurant  location (Neil Solomon).  Both testified - consistent with True Food Kitchen's corporate policies and procedures - that all

---

[2] Deposition of Person Most Knowledgeable (Alain Ane) ("PMK Depo") at 17:15-18:12, 19:5-11, 21:20-22:11. Exh. 3 of Plaintiff's Compendium of Evidence ("P's COE), filed concurrently herein.

[3] PMK Depo at 61:14-63:20, Exh. 3 of P's COE.

[4] PMK Depo at 33:23-34:11, Exh. 3 of P's COE.

2
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Class Members, among other things, are:

(1) typically scheduled to work for six hours;

(2) required to submit and record their time and breaks on the "Aloha" timekeeping system;

(3) to follow the same daily routine at the conclusion of their shifts in completing "side work";

(4) to "cash out" with a manager after their shift and following completion of the required "side work";

(5) subject to Defendants' Meal Period Waiver Agreement;

(6) to follow Defendants' mandate in delivering "exceptional" guest service standards;

(7) required to maintain a distinctive uniform appearance in promoting Defendants' "image";

(8) to utilize "Hot Schedules" to access work schedules; and

(9) to avoid incurring overtime.[5]

Investigation and discovery show evidence of a host of Labor Code violations.  Frequent references to the failure to be paid for all hours worked and disregard for breaks are notable.[6]  This type of ill treatment explains the

---

[5] *See* PMK Depo at 17:15-18:12, 19:5-11, 49:12-51:16, 64:8-66:5, 66:24-67:5, 66:10-23, 70:18-25, 71:20-72:14, 77:12-25, 83:1-84:22, 86:18-87:21, 100:15-101:8, 113:7-10, 135:23-138:7, 176:18-177:24. Exh. 3 to P's COE.  *See* Deposition of Neil Solomon ("Solomon Depo") at 9:12-25, 10:4-14, 11:2-5, 25:18-26:14, 38:11-39:8, 47:15-20, 83:16-89:8, 100:16-101:23. Exh. 4 to P's COE. *See also* Job Descriptions for Servers, Bartenders, Front Desk Host/Hostess (Exhs. 5-7 to P's COE), New Hire Checklist (Exh. 8 to P's COE), Declaration of Alain Ane (Exh. 9 to P's COE), Server Training Agenda & Hospitality Guide (Exh. 12 to P's COE), Employee OnBoarding Tool Kit (Exh. 13 to P's COE), Employee Orientation Tool Kit (Exh. 14 to P's COE), California Meal Period Waiver Agreement (Exh. 16 to P's COE), Fox Restaurant Concepts Handbook (Exh. 17 to P's COE).

[6] *See generally* Declarations of Jennifer Pae ("Pae Decl."); Caterina Alberico ("Alberico Decl."); Tiffany Ballin ("Ballin Decl."); Noor Bhangu ("Bhangu Decl."); Amanda Bui ("Bui

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

astonishing employee turnover rate.

The work schedule for Class Members consisted of two shifts (lunch and dinner) from Monday to Friday, and three shifts (brunch, lunch, and dinner) on Saturday and Sunday.[7]  Class Members typically worked a schedule of approximately six hours a day, four days a week.[8]  Class Members are presented with a Meal Period Waiver Agreement upon hire and during orientation.[9]  Servers, Bartenders, and Hostesses utilized the "Aloha" computerized timekeeping system on the Point of Sale terminals/registers to clock in and out for work and meal breaks.  Defendants' policies dictate that the time punches of restaurant staff is the responsibility of the General Manager.[10]

Management has access and the ability to edit time punches of Class Members.[11]  Plaintiff, along with other potential Class Members, testify to a work culture at True Food Kitchen where managers knowingly instructed Class Members to work off-the-clock and edited time punches to cover up meal break

Decl."); Elizabeth Capps ("Capps Decl."); Christina-Marie Drake ("Drake Decl."); Marguerite Flores ("Flores Decl."); Brittany Hilzinger ("Hilzinger Decl."); David Mosqueira ("Mosqueira Decl."); Paulina Munoz ("Munoz Decl."); Payton Planiden ("Planiden Decl."); Kyla Rattin ("Rattin Decl."); Nicole Restelli ("Restelli Decl."); Kaelyn Roberts ("Roberts Decl."); Tiffany Stansfield ("Stansfield Decl."); Declaration of Tiffany Tran ("Tran Decl.") Porsche Virgil ("Virgil Decl."), *See* Exhs. 18-36 of P's COE.

[7] Deposition of Neil Solomon ("Solomon Depo") at 46:3-9, Exh. 4 of P's COE.

[8] *See* Declaration of Alain Ane, ¶ 9, Exh. 9 of P's COE.

[9] *See* Meal Period Waiver Agreement, Exh. 15 of P's COE. PMK Depo at 176:18-177:24, Exh. 3 of P's COE.

[10] *See* "Pay The Right Way Toolkit", p. 15, Exh. 12 of P's COE; *See also* PMK Depo 142:24-143:19, Exh. 3 of P's COE.

[11] PMK Depo at 116:3-21, 117:19-118:14, Exh. 3 of P's COE; Solomon Depo at 53:1-22, Exh. 4 of P's COE.  While the Company apparently has some form that needs to be completed in order to make the change/edit to time punches on Aloha, True Food Kitchens' CPO is aware of time punches being adjusted without the use of that form. *See* PMK Depo at 121:9-122:6.

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1   violations.[12]  Management at the store level do so, in part, because they face

2   counseling or disciplinary measures for recorded meal break violations.[13]  General

3   Managers are also provided a yearly budget for staffing purposes.  (Solomon Depo

4   at 21:7-10, 27:3-10).  General Managers are salaried employees who earn bonuses

5   for keeping labor costs down and sales high.[14]

6           **B.**    *Plaintiff And The Class She Seeks to Represent*

7           Plaintiff Jennifer Pae is the proposed class representative.  Ms. Pae worked

8   at True Food Kitchen's Santa Monica location as a Server from on or about March

9   of 2015 to April of 2016.  Although Ms. Pae was paid on an hourly basis, she was

10  consistently expected to work off the clock in order to complete all of her many

11  responsibilities. This was due, in part, because of True Food Kitchen's expectation

12  that in addition to serving patrons, she complete the numerous "side work" duties

13  associated with her work as a server during her scheduled six hours of work.[15]

14          Running side work includes tasks that servers, bartenders, and hostesses are

15  required to perform during their shifts aside from servicing guests and patrons.

16  Such side work includes, but is not limited to, sweeping the dining room floor,

17  restocking the service area or wiping down work counters, clean-up and prep

18  activities like rolling silverware (wrap napkins around cutlery), stocking and

19  cleaning the cupboard, restocking condiments, and restocking plates.

20

21          [12] *See* Pae Decl. ¶ 8-12; Alberico Decl. ¶ 8-13; Ballin Decl. ¶ 8-12; Bhangu Decl. ¶ 10;

22  Bui Decl. ¶ 8; Capps Decl. ¶ 8-12; Drake Decl. ¶ 10; Flores Decl. ¶ 7, 9; Hilzinger Decl. ¶ 6, 13;
    Mosqueira Decl. ¶ 6, 8-9; Munoz Decl. ¶ 8-9; Planiden Decl. ¶ 6-9; Restelli Decl. ¶ 5; Roberts

23  Decl. ¶ 5-6; Stansfield Decl. ¶ 6; Tran Decl. ¶ 8-9; Virgil Decl. ¶ 7, Exhs. 18-35 of P's COE.

24          [13] Solomon Depo at 59:9-61:19, Exh. 4 of P's COE

25          [14] PMK Depo at 41:5-46:14, 47:11-25, Exh. 3 of P's COE; Solomon Depo 20:8-23:11,

26  Exh. 4 of P's COE.

27          [15] Deposition of Jennifer Pae ("Pae Depo") at 20:14-17, 25:21-21, 26:4-12, 45:1-13,

28  63:20-65:24, 66:12-69:14, 71:6-17, 75:9-16. Exh. 2 of P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Furthermore, it required cleaning the floors, work counters, tables, and taking out the trash.[16]

During her deposition, Ms. Pae testified that she routinely performed work for which she was not paid.[17]   She confirmed at her deposition that the allegations found in the operative Complaint, namely, that she was scheduled to work six hours but actually worked well beyond six hours without pay was, in fact, correct.[18]

In order to work for Defendants, Plaintiff had to sign a California Meal Period Waiver Agreement as Defendants required *all* employees as part of their "New Hire Checklist" to be exposed to that document.[19]   She explained that if she worked past six hours while clocked in on the Aloha system, it would lead to a meal break violation - or as she and the company called it - break violate.[20]   She further testified that, as a result, she would clock out at or near the sixth hour mark but continued to work off-the-clock, servicing guests, performing side work, and also "cashing out". *Id*.[21]   In addition, when she was scheduled to work more than

---

[16] Pae Depo at 29:7-22, 31:20-33:21; *See also* Pae Decl. ¶ 10, Exh. 18 to P's COE.

[17] Pae Depo at 76:2-25, 111:12-23, 129:16-130:25, 132:9-133:18, 137:25-138:6, 231:18-232:6, 232:10-233:3, 235:9-14, 236:12-22. Exh. 2 of P's COE.

[18] Pae Depo at 120:8-121:21, Exh. 2 of P's COE. Plaintiff also described how her work schedule would often times not have an end time or on other occasions, for evening shifts, it would state "close" as her end time. Pae Depo 51:20-52:15; 53:5-54:2, Exh. 2 of P's COE.

[19] *See* Meal Period Waiver Agreement, Exh. 16 to P's COE. *See also* New Hire Checklist as Exh. 18 to P's COE. The Meal Period Waiver Agreement (Exh. 16) is a "required" document under "Paperwork" as spelled out in Defendants' Employee Orientation Tool Kit, Exh. 14, p. 5, of P's COE.

[20] Pae Depo at 71:18-25, 124:19-125:25, 142:17-24, 157:17-22, 247:6-248:14, Exh. 2 of P's COE; *See also* Solomon Depo at 67:5-20, Exh. 4 of P's COE.

[21] *See also* Pae Depo at 135:2-25, 160:25-163:3, . Exh. 2 of P's COE. *See also* Pae Decl. ¶ 10, Exh. 18 of P's COE.

6

1    six hours, she also did not want to be on the clock and incur overtime as Class

2    Members were told of Defendants' blanket policy that no overtime was allowed.[22]

3        The time spent on side work is extensive.  Its magnitude triggered the

4    constant off-the-clock work Plaintiff was forced to work on a repeated basis.

5    Supporting declarations from Class Members corroborate this unfair burden.[23]

6        Ms. Pae also testified that she received "zero" rest breaks.[24]  She further

7    identified another unlawful practice of clocking out on the Aloha system at or

8    around the fifth hour of work, but then using a co-workers' credentials to regain

9    access to the register to continue waiting on tables.  (Pae Depo at 237:1-238:9).

10   The experiences of Class Members are, likewise, in accord.[25]

11       Ms. Pae and supporting declarants also describe an unlawful practice of

12   Defendants' managers requiring them to clock out almost immediately into their

13   shifts and thereafter working more than five hours without a statutory required

14   break whatsoever.[26]  Plaintiff and supporting Class Members identify these

15

16   ─────────────

17       [22] *See* Fox Restaurant Concepts LLC Handbook, p. 11, Exh. 17, p. 11, to P's COE

18   ("Overtime is generally avoided"); See also Employee Orientation Tool Kit, Exh. 14, p. 15, to
     P's COE. ("Overtime should be avoided"); Pae Depo at 111: 12-23, Exh. 2 of P's COE.

19
         [23] Pae Decl. ¶ 10, 12; Alberico Decl. ¶ 11-12; Ballin Decl. ¶ 10; Bhangu Decl. ¶ 10;
20   Capps Decl. ¶ 13; Drake Decl. ¶ 8, 10; Flores Decl. ¶ 12; Hilzinger Decl. ¶ 12; Munoz Decl. ¶ 9-

21   10; Planiden Decl. ¶ 9; Restelli Decl. ¶ 5-6; Roberts Decl. ¶ 7; Stansfield Decl. ¶ 7; Tran Decl. ¶
     3; Virgil Decl. ¶ 7, Exhs. 18-35 of P's COE,
22
         [24] Pae Depo at 95:4-16, 183:15-23. Exh. 2 of P's COE.
23

24       [25] Pae Depo at 236:12-22, 237:1-238:9, 253:2-12, Exh. 2 of P's COE; *See also* Pae Decl.
     ¶ 8; Alberico Decl. ¶ 8; Ballin Decl. ¶ 7; Bhangu Decl. ¶ 8; Capps Decl. ¶ 8-9; Flores Decl. ¶ 9;
25   Hilzinger Decl. ¶ 7; Mosqueira Decl. ¶ 8; Munoz Decl. ¶ 8; Roberts Decl. ¶ 5; Stansfield Decl. ¶

26   5, Exhs. 18-35 of P's COE,

27       [26] Pae Depo at 85:19-86:9, 89:15-23. Exh. 2 of P's COE; *See also*, Alberico Decl. ¶ 10;
     Bhangu Decl. ¶ 9; Drake Decl. ¶ 7; Flores Decl. ¶ 7; Hilzinger Decl. ¶ 7, See Exhs. 18-35 of P'
28   COE.

─────────────

7

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

uniform practices at True Food Kitchen's restaurants which ultimately led to the unlawful pay practices at issue making certification entirely appropriate.

**C.      *Class Members Are Trained and Instructed To Deliver Service To Patrons At The Cost of Violating Mandated Meal and Rest Breaks***

True Food Kitchen's formal policies and procedures mandate "exceptional standards of food and service."[27] As expressed by True Food Kitchen's founder Sam Fox: "to make every guest feel a connection...to our food, to their experience, to us, to you." *Id*. Defendants' Handbook further adds: "When Sam Fox walks in to your restaurant...he is much more likely to ask you a question...about the level of service you provide to our guests."[28]

While True Food Kitchen purportedly had a uniform policy for meal and rest breaks, the "policy" is merely for show.  Common evidence proves True Food Kitchen failed to relieve Class Members for meal and rest breaks.  Class Members assert that part of this problem is due to Defendants' unwillingness to adequately staff or designate a "breaker" server or bartender to cover tables or stations while Class Members are relieved for breaks.[29]

Given Defendants' strict adherence to guest service and satisfaction it is no wonder why such a workable solution of having a designated "breaker" was not considered.  As one Class Member explained: "I was forced to clock out and take

---

[27] *See* "Server Training Agenda & Hospitality Guide" p. 2 (PAE-TFK-000840), Exh. 12 of P's COE.

[28] *See* Fox Restaurant Concepts Handbook, p. 5 (PAE-TFK-000092), Exh. 17 of P's COE.

[29] *See* Pae Depo at 177:5-180:2, Exh. 2 of P's COE; *See also* Pae Decl. ¶ 8; Alberico Decl. ¶ 8; Ballin Decl. ¶ 7; Capps Decl. ¶ 8; Drake Decl. ¶ 10; Flores Decl. ¶ 8; Mosqueira Decl. ¶ 7, 10; Munoz Decl. ¶ 7; Planiden Decl. ¶ 8, See Exhs. 18-35 of P's COE,  Incredulously, Defendants' own General Manager for the Santa Monica has no recollection whatsoever whether the restaurant he managed for nearly two years had ever a "breaker" server in place. Solomon Depo at 56:18-57:6. Exh. 4 of P's COE.

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

my lunch break soon after my shift started.  They said we had to take our breaks at this time because it was 'bad service' to tell a table that I was taking a break and to pass them off to someone else."[30]  As a result, Plaintiff and Class Members unequivocally testify to clocking out of their shifts only to use a co-workers' credentials to log back into the system and continue working.[31]

Defendants' subterfuge was further established by Defendants' PMK and former General Manager for Santa Monica.  Both were forced to concede that *meal and rest breaks are not scheduled*.[32]  While True Food Kitchen had a meal break exception form, both Company representatives confirmed they never received from any employee - and there was no functional equivalent form for rest breaks.[33]  Further proof is shown in the testimony of Plaintiff, along with numerous other putative Class Members.[34]  They recount numerous times when managers adjusted time entries and edited employees' time punches to eliminate meal break violations, never compensating Class Members with an additional hour of pay. *Id.*  Despite management's concerted effort to conceal break violations, Plaintiff's retained expert found 902 days where a meal break violation was

---

[30] *See* Drake Decl. ¶ 7, Exh. 24 to P's COE.

[31] *See* fn. 25, above.

[32] PMK Depo at 94:12-96:7, Exh. 3 of P's COE; Solomon Depo at 34:9-19, 36:18-24, 37:8-12, Exh. 4 of P's COE.

[33] *See* Meal Break Exception Form as Exh. 10 to P's COE; PMK Depo at 129:2-11, 130:3-20, Exh. 3 of P's COE; *See also* Solomon Depo at 55:22-56:17.

[34] Pae Depo at 82:17-83:1, 88:7-23, 103:21-104:14, 124:19-125:25, 129:16-130:25, 177:5-180:2, 192:22-193:12, Exh. 2 of P's COE. See also, Pae Decl. ¶ 5-12; Alberico Decl. ¶ 6-13; Ballin Decl. ¶ 7-10; Bhangu Decl. ¶ 7-11; Bui Decl. ¶ 7-8; Capps Decl. ¶ 7-13; Drake Decl. ¶ 7-12; Flores Decl. ¶ 7-13; Hilzinger Decl. ¶ 6-10, 12-14; Mosqueira Decl. ¶ 5-10; Munoz Decl. ¶ 7-11; Planiden Decl. ¶ 6-9; Rattin Decl. ¶ 5-7; Restelli Decl. ¶ 4-10; Roberts Decl. ¶ 5-7; Stansfield Decl. ¶ 5-7; Tran Decl. ¶ 8-9, Virgil Decl. ¶ 5-7, See Exhs. 18-35 of P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

apparent at True Food Kitchen.[35]

### D.   *Class Members Routinely Work After Their Regularly Scheduled Hours Completing Side Work For Which They Are Not Paid*

Daily off-the-clock work routinely occurs after scheduled hours.  This stems, in part, from the inordinate amount of side work True Food Kitchen requires Class Members to complete in addition to serving guests and patrons.

In fact, Defendants' formal policies clearly communicate to Class Members that "*At All Times*...Tabletops and bases should be spotless. Look underneath the table for gum. Be sure to crumb booths and cracks for debris, *before*, during, and *after* your shifts."[36]

Likewise, the job descriptions for Class Members all uniformly direct Servers, Bartenders, and Hostesses to "perform side work at the start and *end of each shift* as required by service station assignment."[37]  Defendants' unrealistic expectation is that serving customers and completing side work is to take place within the established six-hour schedule exclusive of any requests for overtime.

Numerous Class Members, however, like Plaintiff, testify that such a work performance was near to impossible to complete without committing a break violation or having to work beyond eight hours.[38]  As Plaintiff succinctly stated, "How am I supposed to finish side duties at the end of the night if I'm only

---

[35] Declaration of Eric R. Lietzow, ¶ 8, Exh. 38 to P's COE.  The actual number of days with facially evident meal break violations is likely much higher.  Despite Defendants' agreement to produce the time records of 25% of the 1,739 Class Members who did not opt-out of releasing their contact information through the *Belaire-West* notice process, Defendants only provided such time records for 110 Class Members as opposed to the agreed upon 435.  *Id.* at ¶ 5; *see generally* Declaration of Armand R. Kizirian, Exh. 39 to P's COE.

[36] *See* "Server Training Agenda & Hospitality Guide" p.  (PAE-TFK-000864)

[37] *See* Job Descriptions, Exhs. 5-7 to P's COE.

[38] Pae Depo at 53:3-55:14, 59:7-23, 60:16-61:23, 62:23-63:2, 63:20-65:24, 66:12-69:14, 71:6-17, 75:9-16, Exh. 2 of P's COE. *See also*, fn. 23, above.

---

10

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1  allotted six hours? If I go over, I break violate." (Pae Depo at 132:9-133:18)  This
2  side work entailed the Class Member to look at a chart to determine his or her
3  assigned side work duties.[39]  Defendants would designate a closer who was
4  responsible for signing off on that Class Member completing the side work before
5  being allowed to cash out with a manager and then to leave the restaurant.  All this
6  work was done off-the-clock for which Class Members were not paid.[40]

7        **E.    *"Cashing-Out" Takes Place Only After The Scheduled Shift And**
8             ***Off-The-Clock Completion of Side Work Duties***

9        At the end of their shifts, Servers and Bartenders had to clock-out.  But they
10  had to continue to work while managers ran a "cash out" report showing sales and
11  tips.  Specifically, Class Members had to print out a "Cash-Out Report" ticket to
12  run these reports.  While waiting, they performed side work while managers
13  reconciled tips and sales generated by Servers and Bartenders.

14        Defendants' formal policies and procedures clearly demonstrate that the
15  "cash out" process happens at the end of the shift and *after* Class Members have
16  completed their assigned side work responsibilities.[41]  In fact, in order to collect
17  their tips from the cash out, Class Members had to show the manager in charge
18  that the designated closer had signed off on that Class Member completing his or
19  her assigned side work. *Id*. Defendants' policies also elaborate that "if you are a
20  tipped employee, please pick up tips during down time, not in the middle of the

21
22
23  _____
24        [39] Pae Depo at 56:13-57:9, Exh. 2 of P's COE.

25        [40] *See* fn. 23.

26        [41] *See* Server Training Agenda & Hospitality Guide, p. 34 (PAE-TFK-000872) ("*At the*
27  *end of your shift*, you are required to do a cash-out, which you will turn in to the manager on-
    duty.") *See also* PMK Depo at 135:23-138:7; Solomon Depo at 83:16-89:8, 100:16-101:23,
28  Exhs. 3 and 4 of P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

rush."[42] However, as Plaintiff made clear, and others' testimony confirms, there was "no down time" since she worked in a "very busy, busy establishment."[43]

Because such side work is routinely performed off-the-clock, the cash out process is likewise done after the Class Member has clocked out from his or her shift.[44] Even after the "side work" is completed and signed off, Class Members still have to wait for managers and others employees who are likewise waiting to be cashed out. *Id*.

### F. *Class Members Incur Necessary Business Expenditures For Which They Are Not Reimbursed*

As part of her job at True Food Kitchen, Plaintiff purchased t-shirts, aprons, and shoes. Because her clothing would become stained and dirty from work, Plaintiff was required to replace her clothing at an unusually frequent rate.[45] She also had to iron her apron. *Id*. The section entitled "Uniform and Grooming" in Defendants' Handbook provides the following: "The '*image*' you project is one of the reasons you are on our team ... All positions will have uniform and style standards based on the restaurant concept." A similar handbook instructs Class Members to have their clothes "clean and *pressed*."[46]

---

[42] *See* Employee On-Boarding Tool Kit, p. 14 (PAE-TFK-000296).

[43] Pae Depo at 77:14-78:7, 79:5-24, Exh. 2 of P's COE.

[44] Solomon Depo at 85:21-89:8, 100:16-101:23, Exh. 4 of P's COE. *See also* Pae Decl. ¶ 10; Alberico Decl. ¶ 11, 13; Ballin Decl. ¶ 9-10; Bhangu Decl. ¶ 10; Capps Decl. ¶ 13; Drake Decl. ¶ 10; Flores Decl. ¶ 13; Hilzinger Decl. ¶ 13; Munoz Decl. ¶ 9; Restelli Decl. ¶ 8; Roberts Decl. ¶ 6, Exhs. 18-35 of P's COE.

[45] Pae Depo at 34:13-35:15, 198:3-9, 200:5-16, 201:4-12, 202:3-203:10, 205:3-207:13. Exh. 2 of P's COE.

[46] *See* Employee Orientation Tool Kit, p. 15, Exh. 14 of P's COE. That manual also adds: "Provide the new hire with any uniform items we provide and/or give them the guidelines for any uniform items *they must purchase on their own*). *Id*., at p. 20.

Class Members, including Plaintiff, must display this "image" given in directives made by Defendants' managers to Class Members.  With respect to shoes, Defendants' managers communicate name brands to Class Members to purchase, for instance, Vans, Converse, or Toms.  Uniformly and illegally, Class members, like Plaintiff, were not reimbursed for clothing they had to purchase.[47]

## III.   ARGUMENT:   PLAINTIFF'S PROPOSED CLASS MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION.

### A.   *Legal Standard*

A proposed class must satisfy the requirements of Federal Rules of Civil Procedure Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Stanton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir.2003).  While it is the Plaintiff's burden of proof to establish the requirements for class certification, this burden is satisfied when a court is provided with a sufficient basis for forming a reasonable judgment on each requirement.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975); *Cruz v. Dollar Tree Stores, Inc.*, 2009 WL 1458032 at *4 (N.D. Cal. 2009).  Class certification is proper if all four of the requirements under Rule 23(a) and the requirements of any of the three prongs of Rule 23(b) are satisfied. *General Tel. Co. of the Southwest v. Falcon*, 457 US. 147, 161 (1982).  All the requirements of Rule 23(a) and (b)(3) are satisfied here.

### B.   *The Proposed Class Satisfies Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impractical."  Defendants attributed a class size of 1,869 individuals consisting of all non-exempt, hourly restaurant workers for the three restaurants in

---

[47] *See* Pae Decl. ¶ 13; Alberico Decl. ¶ 14; Ballin Decl. ¶ 13; Bhangu Decl. ¶ 12; Bui Decl. ¶ 9; Capps Decl. ¶ 14; Drake Decl. ¶ 13; Flores Decl. ¶ 6; Hilzinger Decl. ¶ 11; Mosqueira Decl. ¶ 11; Munoz Decl. ¶ 14; Planiden Decl. ¶ 10; Rattin Decl. ¶ 8; Stansfield Decl. ¶ 8; Virgil Decl. ¶ 8, Exhs. 18-35 of P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1   question.[48]  Defendants' PMK confirmed that "Servers" were the predominant

2   group of employees.  Adding Bartenders and Hostesses to the proposed class

3   clearly establishes that the numerosity requirement has been satisfied.

4        **C.    *The Proposed Class Satisfies Commonality***

5        "Rule 23(a)(2) has been construed permissively.  All questions of law and

6   fact need not be common to satisfy the rule.  The existence of shared legal issues

7   with divergent factual predicates is sufficient, as is a common core of salient facts

8   coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler*

9   *Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).

10       Rule 23(a)(2) presents a "minimal" bar to class certification.  *Id*. at 1020.

11  "In determining whether common questions exist, the court need not determine

12  whether these questions will be answered in plaintiffs' favor."  *Adoma v.*

13  *University of Phoenix, Inc.*, 270 F.R.D. 543, 548 (E.D. Cal. 2010) (emphasis in

14  original).  Defendants' standardized policies and de facto procedures concerning

15  the employees' schedules, their inability to take statutory breaks, the constant

16  similar challenges that Class Members faced in coming up against the sixth or

17  eighth hour marks and the required completion of "side work" and "cash out",

18  demonstrate the commonality of Plaintiff's claims, and the suitability of class

19  treatment.

20       Under the second prerequisite of Rule 23(a), common questions of law or

21  fact must exist among class members.  *See* Fed. R. Civ. P. 23(a)(2).  The showing

22  needed to satisfy commonality is minimal.  *See Hanlon,*150 F.3d at 1020; *In re*

23  *Paxil Litig*., 212 F.R.D. 539, 543 (C.D. Cal. 2003) (stating that "the commonality

24  requirement to be met is interpreted to require very little.").  Indeed, "[t]he

25  existence of shared legal issues with divergent factual predicates" is sufficient to

26  satisfy the commonality requirement.  *Hanlon*, 150 F.3d at 1019.  The proposed

27

28

---

[48] Ane Decl. ¶ 9, Exh. of P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

class easily satisfies this threshold.

*Common factual questions include*:

•       Whether class members were required to work off-the-clock without compensation;

•       Whether class members were required to accept wages for a maximum number of hours per day, without regard to how much time it took class members to actually complete their assigned work;

•       Whether Class Members were required to perform work besides waiting on tables and servicing Defendants' guests and patrons;

•       Whether Defendants pressured Class Members to sign Meal Period Waiver Agreements to regulate the number of hours worked by Class Members;

•       Whether Defendants scheduling of Class Members to five or six hour shifts created onerous and time-consuming requirements for class members to get paid for time worked in excess of their scheduled times for work;

•       Whether Defendants employed a scheme to have Class Members clock out for their purported breaks only to have them continue serving guests to maximize on their "great hospitality all the time" mantra; and

•       Whether Defendants fostered an intimidating and hostile work environment to dissuade, discourage, and impede Class Members' ability to receive compensation for all hours worked, or to have meal and rest breaks.

*Common legal questions include*:

•       Whether, in contravention of *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 584-86 (2000), Defendants failed to pay class members at least a minimum wage for each and every hour of work that they performed for Defendant;

•       Whether Defendants had actual knowledge or constructive knowledge that Class Members were working off-the-clock;

•       Whether Defendants' failure to provide an accurate wage statement

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

omitting all the hours worked or not including break penalties caused an "injury" to class members, in violation of Cal. Labor Code §§ 226 and 1174;

•   Whether Defendant wilfully failed to pay all wages earned upon termination or resignation of employees in violation of Cal. Labor Code § 203;

•   Whether Defendants knowingly and intentionally failed to provide class members with an accurate itemized statements in violation of Cal. Labor Code § 226 and whether class members suffered injury as a result; and

•   Whether Defendants' actions constitute unfair business practices.

### D.   Plaintiff Satisfies The Typicality Requirement of Rule 23(a)(3)

The requirement of typicality is also a permissive one in the Ninth Circuit. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is 'whether other members have the same or similar injury, whether the other class members have been injured by the same course or conduct.'" *Hanon Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)

In this case, Plaintiff alleges the same facts and claims as the rest of the class. Typicality is not defeated by factual differences when the claims arise from similar events or courses of conduct. *Cook v. Rockwell Intl Corp.*, 151 F.R.D. 378, 385-86 (D. Colo. 1993). In *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001), "the plaintiffs worked different hours at different locations for different employers, during different periods of time and for different levels of compensation." Nonetheless, the Court found that each putative class member's claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability. *Id*. at 87.

The fact that the actual amount of damages suffered by the named plaintiff may be different from the damages suffered by each class member does not defeat typicality. *See In Re Activision Sec. Litig.*, 621 F.Supp. 415, 428 (N.D. Cal. 1985).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1    The "claims ... of the representative parties [must be] typical of the claims ...

2    of the class."  Fed. R. Civ. P. 23(a)(3).  A representative plaintiff's claim is typical

3    if (1) it arises from the same course of conduct that gives rise to the claims of the

4    other class members, and (2) it is based on the same legal theory as the claims of

5    the other class members. *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

6    Plaintiff's claims are typical of those of the Class because they arise from

7    the same course of conduct and rely upon the same legal theories.  Ms. Pae has

8    been subjected to the same unlawful practices.  She has suffered identical injuries.

9    She has been subjected to the same policies and de facto procedures dictating her

10   compensation by (1) being scheduled for six hours and in line with Defendants'

11   Meal Period Waiver Agreement, (2) required to deliver exceptional service to

12   guests at the cost of violating meal and rest break policies, (3) required to

13   complete the assigned "side work" off-the-clock before being allowed to receive

14   her tips from the "cash out" process and leaving the restaurant.  Because these

15   wage and hour violations were so consistent and uniform, class treatment is

16   appropriate.

17       **E.    The Representative Plaintiff and Plaintiff's Counsel will Fairly**

18       **and Adequately Protect the Interests of the Class.**

19   The fourth and final prerequisite of Rule 23(a) is that a proposed class

20   representative must be able to "fairly and adequately protect the interests of the

21   class."  Rule 23(a)(4)'s adequacy requirement involves the satisfaction of two

22   factors: "(1) do the named plaintiffs and their counsel have any conflicts of

23   interest with other class members and (2) will the named plaintiffs and their

24   counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d

25   at 1020.  *See also Stanton*, 327 F.3d at 957 (same).  With regard to the first prong

26   of Rule 23(a)(4)'s test for adequacy, it is well-settled that "only a conflict that goes

27   to the very subject matter of the litigation will defeat the party's claim of

28   representative status."  *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

335 (C.D. Cal. 1998).  Both elements of the adequacy test are satisfied here.

No evidence exists that Plaintiff or her counsel have any interest antagonistic to the interests of the class.  On the contrary, Plaintiff and Class Members share a common interest in challenging Defendants' unlawful actions.

Plaintiff has demonstrated a willingness to assist her counsel in the prosecution of this litigation.  *See also In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (finding Rule 23(a)(4)'s adequacy requirement satisfied where plaintiff possesses a "rudimentary understanding" of the action and a "willingness to assist" counsel in the prosecution of the litigation).  Plaintiff has retained counsel who are qualified, experienced, and knowledgeable in the issues raised herein and in similar class action litigation.  No conflicts are present.

### 1.   Plaintiff Is An Adequate Representative

Plaintiff's interests are squarely aligned with the interests of the class.[49] Plaintiff was subjected to the same workplace requirements as other class members, performed the same duties as other class members, and was paid based on the same standardized policies and de facto procedures as other class members. Ms. Pae is ready, willing and able to continue their participation.  *Thomas & Thomas Rodmakers v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002), (adequacy of representation satisfied when class representatives displayed "rudimentary understanding of the nature" of the case and "demonstrated willingness to assist counsel in the prosecution of the litigation.").  Finally, absent a powerful showing to the contrary, adequacy should be presumed.  *Guaranty Insurance Agency Corp. v. Mid-Continental Realty Co.*, 57 F.R.D. 555, 565-566 (N.D. Ill. 1972).

### 2.   Class Counsel's Experience Satisfies Rule 23(a)(4)

Plaintiff's counsel have significant experience in all manners of complex

---

[49] *See* Pae Decl. ¶ 2, Exh. 18 to P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

litigation relating to class actions involving violations of labor rights.  Plaintiff's counsel have the ability, expertise, and resources to prosecute this action.  Counsel have identified and investigated the claims, have demonstrated knowledge of the applicable law, and have adequate resources to represent the proposed class.[50]  *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 574 (C.D. Cal. 2008).

### F.   Class Certification Is Proper Under Rule 23(b)(3)

Certification of a class under Rule 23(b)(3) is appropriate where, as here, "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods" to resolve the case.  F. R. Civ. P. 23(b)(3).

The question posed by the predominance inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "The common questions need not be dispositive of the entire action.  In other words, 'predominate' should not be automatically equated with 'determinative.'"  A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d ("WRIGHT, MILLER & KANE"), § 1778.  Indeed, the very use of the word "predominate" contemplates that individual issues will also be present.

### 1.   Common Questions of Law and Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623 (1997).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).

In the wage and hour context, the principle that individualized damages should not defeat class certification is even stronger in light of the

---

[50] *See generally* Declarations of Thomas W. Falvey and Alex Hartounian, Exhs. 36-37, respectively, of P's COE.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1   well-established principle that employees may rely on reasonable estimates of their

2   damages if the employer fails to maintain adequate records.  *See Anderson v. Mt.*

3   *Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (reasonable estimates of average

4   hours and damages will suffice where defendant did not properly track hours

5   worked by employees), superseded in part by statute; *McLaughlin v. Seto*, 850

6   F.2d 586, 589 (9th Cir. 1988) (same); *Perez v. United States Dist. Court, Tacoma*,

7   749 F.3d 849, 853 (9th Cir. 2014) (same).  These cases recognize that the

8   employee should not be punished where the employer failed to keep proper

9   records as required by law.

10   Here, the issues are the same for all Class Members.  Working past six

11   hours triggers True Food Kitchen's obligation to provide a statutory meal break to

12   Class Members.  Common evidence shows that Defendants typically scheduled

13   Class Members six hour shifts in line with their Meal Break Waiver forms.  In

14   reality, however, Class Members, including Plaintiff, were clocking out from work

15   at or near the sixth or even the eight hour mark but continuing to work

16   off-the-clock by either continuing to wait on tables or completing the required

17   "side work" and then "cashing out."  Defendants' policies support this conclusion

18   because such activities are to be done at the end of the shift, and off the clock.

19   Indeed, Class Members including Plaintiff explain that this was done to

20   avoid a meal break violation (or "break violate") or incur overtime which was not

21   allowed at True Food Kitchen.  Ms. Pae and Class Members also describe an

22   unlawful practice of clocking out for a supposed meal break on the Aloha POS

23   timekeeping system but actually continuing to wait tables.  Each of the claims

24   Plaintiff seeks to certify are based on common, uniform policies and practices.

25           2.   Failure to Pay All Wages Earned, Failure to Pay Minimum

26                  Wage, Failure to Pay Overtime Wage

27   Plaintiff claims that Defendants failed to pay all wages earned (1st Cause of

28   Action), failed to pay wage minimum wage (2nd Cause of Action), failed to pay

1   overtime wages (3rd Cause of Action).

2        Under California labor laws, employees must be paid for all time they are

3   under the employer's control, including the time they are suffered or permitted to

4   work.  See I.W.C. Wage Order 9, § 4; *Morillion v. Royal Packing Co.*, 22 Cal.4th

5   575, 584-86 (2000).[51]  Wages include all amounts for labor performed of every

6   description whether the amount is fixed or ascertained by the standard of time,

7   task, piece, commission basis, or other method of calculation.  Cal. Labor Code §

8   200(a).  Wage Order No. 14-80 defines "hours worked" as "the time during which

9   an employee is subject to the control of an employer, and includes all the time the

10  employee is suffered or permitted to work, whether or not required to do so."

11  Wage Order No. 14-80 (Subd. 2(G)).

12       Moreover, any failure to pay all wages is a minimum wage violation.  Wage

13  Order No. 4(4)(B) ("[e]very employer shall pay to each employee, on the

14  established payday for the period involved, not less than the applicable minimum

15  wage for all hours worked in the payroll period, whether the remuneration is

16  measured by time, piece, commission, or otherwise.") (emphasis added); *see*

17  *Armenta*, 135 Cal.App.4th at 321-24.

18       True Food Kitchen admits that side work and cashing out occur at the

19  conclusion of each shift.  Plaintiff's testimony and supporting declarations

20  evidence the hours worked for which they were not paid, under Defendants'

21  scheme to schedule Class Members on shifts of six hours or less.

22       Plaintiff's theory of liability is that the scheduling of Class Members does

23  not compensate these restaurant workers for all work hours; it only compensates

24  activities based on Defendants' set budget time.  Accordingly, Defendants do not

25

26

27       [51] This standard is more favorable to the employee than federal law.  *Morillion*, 22 Cal.
    4th at 588-590.  Unlike federal law, "averaging" is not permitted to determine whether minimum
28  wage requirements are met.  *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005)
    (emphasis added)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1  pay Class Members directly for all time worked, nor does it comply with the Labor

2  Code.  Because Defendants failed to pay wages for work performed and because it

3  was fully aware Servers, Bartenders, and Hostesses were performing such

4  "off-the-clock" work, it will be proven liable.  These practices are uniform at the

5  restaurant locations in question; the commonality requirement is easily satisfied.

6                  3.    <u>Failure to Provide Meal and Rest Periods</u>

7         Plaintiff alleges that she and Class Members were not provided with legally

8  compliant meal and rest breaks.  While True Food Kitchen will likely argue that it

9  maintained facially lawful policies to bar certification, what matters is not the

10  writing, but what was actually implemented in practice.

11         In *Pina v. Con-way Freight, Inc*., 2012 WL 1278301 (N.D. Cal. 2012), class

12  members asserted meal and rest break violations, although the employer had a

13  legally-compliant policy.  The employer argued, like True Food Kitchen surely

14  will, that because it had a compliant, formal policy, any inquiry into meal/rest

15  break violations would be inherently individualized.  *Id*. at 7.  The court soundly

16  rejected the notion a compliant paper policy defeats class certification, finding a

17  class could be certified if the employees could demonstrate through common proof

18  of an informal practice of discouraging breaks.  *Id*.

19         Plaintiff has produced ample evidence demonstrating Defendants' policies

20  demanding the putative class Class Members deliver "exceptional" guest service,

21  and how this mandate is done at the cost of violating their statutorily-entitled meal

22  and rest breaks.

23         Plaintiff and her supporting declarants testify to: (1) clocking out for a

24  purported break but continuing to work due to the lack of coverage; (2)

25  Defendants' managers directing Plaintiff and Class Members to clock out for a

26  supposed meal break almost immediately into a shift only to work thereafter for

27  five or more hours without any such break; (3) Defendants' managers editing and

28  adjusting time punches to conceal meal break violations; and (4) scheduling Class

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1  Members for six hours or less to not trigger a meal break obligation but requiring

2  them to work beyond the scheduled hours without providing such breaks.

3  *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services,*

4  *Inc.*, 2009 WL 249888 at *6 (S.D. Cal. 2009) (certifying class based on evidence

5  that schedules did not allow class members to take breaks).

6      Plaintiff and her supporting declarants are unequivocal that they were not

7  provided and could not take rest breaks.  Defendants also admit that they don't

8  schedule meal and rest breaks on work schedules.  See *Dilts v. Penske Logistics,*

9  *LLC*, 267 F.R.D. 625, 636 (S.D. Cal. 2010)  (certifying meal and rest period class

10 based in part on employer practice of not scheduling meal periods and defendant's

11 failure to record or note when a meal period was taken.)

12     True Food Kitchen cannot shift the burden to keep accurate records on

13 Class Members where managers altered time records.  *Hernandez v. Mendoza*, 199

14 Cal.App.3d 721, 727 (1988).  The common legal question is whether they gave

15 class members accurate wage and hour statements as required by California law.

16                    4.    Failure to Reimburse Business Expenditures

17     Labor Code section 2802 provides, in pertinent part, that "An employer

18 shall indemnify his or her employee for all necessary expenditures or losses

19 incurred by the employee in direct consequence of the discharge of his or her

20 duties or of his or her obedience to the directions of the employer . . ."

21     Here, Class Members uniformly incurred a host of business-related

22 expenditures for which they were not reimbursed by Defendants.  Specifically,

23 Class Members, including Plaintiff, purchased clothing unique to Defendants'

24 "image" and such purchases occurred more frequently than would be expected at a

25 typical retail setting due to working in a busy restaurant.

26     Defendants' common policy related to the maintenance of uniforms

27 requiring them to be clean and pressed.  Plaintiff in particular had to iron her

28 apron regularly. *See Ochoa v. McDonald's Corp.*, 2016 U.S. Dist. LEXIS 88323,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

at *22-24 (N.D. Cal. July 7, 2016) (certifying class of restaurant employees under Cal. Labor Code section 2802 claims for the special laundering, care, and maintenance of uniforms.)

### 5.    Unfair Competition Claims

True Food Kitchen's conduct violates the Unfair Competition Law (Seventh Cause of Action), codified at Business and Professions Code §§ 17200, *et. seq*. It prohibits businesses from engaging in "any unlawful, unfair, or fraudulent business act or practice..."  The scope of this prohibition is intentionally broad, *see Cal-Tech Communic., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 162, 180 (1999), and "embrac[es] anything that can properly be called a business practice and that at the same time is forbidden by law." *Id*.

It is well settled that failure to comply with the Labor Code's wage provisions is a basis for a violation of the UCL.  *See Cortez v. Purolator Airfiltration Prod. Co.*, 23 Cal.4th 163, 168 (2000) ("[w]e conclude that orders for payment of wages unlawfully withheld from an employee are also a restitutionary remedy authorized by section 17203."); *Hudgins v. Neiman Marcus Grp., Inc*., 34 Cal.App.4th 1109 (1995); *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 712 (2005).  The common legal questions are whether Defendants' violation of California's wage and hour law also violate California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et. seq.*).

### 6.    Derivative Claims

If common issues of law and fact predominate as to any of Plaintiff's failure to pay all wages claims or meal and rest period claims, logic dictates that predominance should also be found with respect to the aspects of Plaintiff's Labor Code § 226 claim for inaccurate wage statements and § 203 claim which are derivative of these claims.

Plaintiff's burden to prove that she suffered an injury is not a barrier to class certification.  Case law squarely holds that the difficulty and expense of having to

reconstruct time records due to inaccurate wage statements constitutes a class wide injury, making class certification of section 226 claims appropriate. *See Elliot v. Spherion Pacific Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008); *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1306-07 (2010).

### G.    Class Treatment is Superior

Rule 23(b)(3) sets forth the factors to consider in determining whether class certification is superior.  These factors are (1) the interest of each member in "individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the difficulties likely to be encountered in the management of a class action."

As in this case, "[w[here damages suffered by class members are not large, [the first] factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001). The above factors demonstrate that a class action would be superior in this case.  Absent class adjudication, judicial resources would be strained by hundreds of individual claims all addressing identical issues.  For many, individual wage and hour suits are not feasible.  A class action is the only realistic chance for these workers to have their claims efficiently, fairly addressed.

## VI.    CONCLUSION: CLASS CERTIFICATION SHOULD BE GRANTED

For all the foregoing reasons, and each of them,Plaintiff respectfully requests that the Court grant her motion for class certification.

DATED:  September 28, 2017    LAW OFFICES OF THOMAS W. FALVEY
                                                      HARTOUNIAN LAW FIRM
                                          By: /s/ Michael H. Boyamian
                                          MICHAEL H. BOYAMIAN
                                          Attorneys for Plaintiff, individually, and on behalf
                                          of all others similarly situated

25

## **ATTESTATION**

I hereby attest that the concurrence in the filing of this document has been obtained from Michael H. Boyamian of the Law Offices of Thomas W. Falvey, Attorneys for Plaintiff.

DATED:  September 28, 2017        LAW OFFICES OF THOMAS W. FALVEY
                                 HARTOUNIAN LAW FIRM


                                 By: /s/ Armand R. Kizirian
                                 ARMAND R. KIZIRIAN
                                 Attorneys for Plaintiff, individually, and on
                                 behalf of all others similarly situated

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION