1
2
3
4
5
6
7
8
9
10
11
12

BOYAMIAN LAW, INC.
MICHAEL H. BOYAMIAN (SBN 256107)
ARMAND R. KIZIRIAN (SBN 293992)
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5300 | Fax: (818)547-5678
E-mail: michael@boyamianlaw.com,
         armand@boyamianlaw.com

LAW OFFICES OF THOMAS W. FALVEY
THOMAS W. FALVEY (SBN 65744)
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5200 | Fax: (818) 500-9307
E-mail: thomaswfalvey@gmail.com

HARTOUNIAN LAW FIRM
ALEX HARTOUNIAN, SBN 252210
418 N. Fair Oaks Ave., Suite 202
Pasadena, California 91103
Telephone:   (818) 794-9675
Facsimile:   (818) 459-6997
E-mail:      alex@h-lf.com

13
14

Attorneys for Plaintiff JENNIFER PAE, ALEXANDRA SHELDON,
individually and on behalf of all others similarly situated.

15

**UNITED STATES DISTRICT COURT**

16

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17<br>18<br>19<br><br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | JENNIFER PAE, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>        vs.<br><br>FOX RESTAURANT CONCEPTS, LLC d/b/a TRUE FOOD KITCHEN; a Arizona limited liability company; FRC TRUE FOOD SMP, LLC, a California limited liability company; FRC TRUE FOOD SDFV, LLC, a California limited liability company; FRC TRUE FOOD NBFI, LLC, a California limited liability company; and DOES 1 through 25, inclusive,<br><br>                                      Defendants. | CASE NO.  2:16-cv-06965-DSF-FFM<br><br>*[Assigned to the Hon. Dale S. Fischer, Courtroom 7D]*<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with the Declaration of Thomas W. Falvey; Declaration of Michael H. Boyamian; Declaration of Alex Hartounian; [Proposed] Order]<br><br>Hearing Date:    October 1, 2018<br>Time:            1:30 p.m.<br>Courtroom:       7D<br><br>Complaint Filed: July 22, 2016<br>Removal Date: September 16, 2016 |

1

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;**
**Memorandum of Points and Authorities in Support Thereof**

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please Take Notice that on Monday, October 1, 2018, at 1:30 p.m., or as soon thereafter as the matter can be heard in Courtroom 7D of the United States District Courthouse located at 312 North Spring Street, Los Angeles, California, before the Honorable Dale S. Fischer, Plaintiffs Jennifer Pae and Alexandra Sheldon ("Plaintiffs") will and hereby do move this Court for an Order Granting Preliminary Approval of Class Action Settlement.  Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declarations of Thomas W. Falvey, Michael H. Boyamian, and Alex Hartounian and the respective exhibits thereto; the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

Plaintiffs filed this class action lawsuit to address a common occurrence in today's workplace: the insistence of employers to strictly adhere to labor budgets regardless of the off-the-clock work and missed meal and rest breaks that such policies cause.  Plaintiffs allege Defendants Fox Restaurant Concepts, LLC, FRC True Food SMP, LLC, FRC True Food SDFV, LLC, and FRC True Food NBFI, LLC ("Defendants" or "True Food Kitchen") consistently failed to pay them and their fellow True Food Kitchen front-of-the-house staff for all hours worked, and that they were not provided meal and rest periods.

Numerous True Food Kitchen employees were contacted and verified what Plaintiffs were claiming, namely, that they were not being paid what they were owed, and that they were not being provided with the meal and rest breaks to which they were entitled.  Many signed declarations to this effect which were used in support of Plaintiffs' Motion for Class Certification, which was fully briefed but not ruled on by the Court prior to the Parties entering into this settlement agreement.

i

Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof

1   Defendants vehemently denied - and continue to deny - all allegations.
2   Defendants claim that Class Members were properly paid for all hours worked,
3   provided with meal and rest breaks, and reimbursed for any business expenses in
4   conformity with California law.

5       Class Counsel have reviewed numerous documents pertaining to the Class,
6   such as employee manuals, wage statements, internal training manuals for
7   managers, job descriptions, and other records.

8       Plaintiff Jennifer Pae underwent fierce questioning by Defense Counsel
9   during her deposition and stood by her allegations. She was prepared to see this
10  matter through class certification, even while Defendants tried to undermine the
11  truth of her allegations. Similarly, Plaintiff Alexandra Sheldon originally filed her
12  own suit under the Private Attorneys General Act of 2004. Her claims were
13  brought into this suit for purposes of effectuating a global settlement.

14      Finally, the Class Representatives have negotiated a settlement that, if
15  approved by the Court, will result in a payment of $900,000 (Nine Hundred
16  Thousand Dollars) to these True Food Kitchen front-of-the-house employees.
17  Plaintiffs now seek preliminary approval of this class action settlement.

18      The Class Representatives believe the settlement is fair, reasonable, and
19  adequate. Plaintiffs seek to begin the settlement approval process outlined in the
20  Manual for Complex Litigation (Fourth) §§ 21.632-35 (henceforth, "Complex
21  Manual"). They respectfully request that the Court review the Settlement
22  Agreement attached as Exhibit "1" to the Declaration of Thomas W. Falvey
23  ("Falvey Decl."), and enter an order:

24      (1) granting preliminary approval of the proposed Settlement;

25      (2) conditionally certifying the Class for settlement purposes;

26      (3) approving the form, content and method of distribution of the Notice of
27  Class Action Settlement;

28  ///

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

1    (4) appoint the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., and

2    the Hartounian Law Firm, P.C. as Class Counsel;

3    (5) appoint Plaintiffs Jennifer Pae and Alexandra Sheldon as class

4    representatives;

5    (6) appoint CPT Group as Settlement Administrator;

6    (7) set a filing deadline for Class Counsel's motion requesting attorneys'

7    fees, costs, enhancement award to Plaintiffs; and

8    (8) schedule a hearing regarding Class Counsel's requests for attorney's fees

9    and costs, enhancement awards to Plaintiffs, and final approval of the proposed

10   Settlement.

11                              Respectfully Submitted,

12   Dated: September 3, 2018     BOYAMIAN LAW, INC.
                                  LAW OFFICES OF THOMAS W. FALVEY
13                                HARTOUNIAN LAW FIRM, P.C.

14
                                 By: /s/ Armand R. Kizirian
15                                   Armand R. Kizirian
                                     Attorneys for Plaintiffs and the Putative Class
16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   TERMS OF THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  Class Definition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  Settlement Amount. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  Allocation of Payment And Distribution To Class Members. . . . . . . . 6

    D.  Attorneys' Fees, Costs, and Enhancement Fee. . . . . . . . . . . . . . . . . . 7

    E.  Costs of Settlement Administration.. . . . . . . . . . . . . . . . . . . . . . . . . . 8

    F.  PAGA Penalties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    G.  Administration Of Notice and Opt-Out Process. . . . . . . . . . . . . . . . . 8

    H.  Disputes, Request for Exclusion, and Objections . . . . . . . . . . . . . . . . 9

    I.  Release of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.    LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A. Preliminary Approval of the Settlement is Appropriate . . . . . . . . . . . . 11

        1.   The Settlement is the Product of Informed, Non-Collusive
            Negotiation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.   The Strength of Plaintiff's Case and the Risk of Further
            Litigation Support Preliminary Approval . . . . . . . . . . . . . . . . 12

        3.   The Settlement Falls Within the Range of
            Possible Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        4.   Plaintiffs Request for Attorneys' Fees and Costs
            are Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        5.   Plaintiff's Request for an Enhancement Award
            is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        6.   The Settlement Administrator Costs are Reasonable . . . . . . . 21

///

i

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

B. The Class Should be Provisionally Certified . . . . . . . . . . . . . . . . . . . . . 21

    1. Standards Governing Approval of Settlement Classes . . . . . . . . 22

    2. The Class Satisfy the Requirements of Rule 23(a) . . . . . . . . . . . 22

    3. The Class Meets the Requirements of Rule 23(b)(3) . . . . . . . . . 24

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

# TABLE OF AUTHORITIES

**Cases**

*Bautista v. Havesvest Management Sub,*
No. 2:12-cv-10004 (ECF No. 60) (C.D. Cal.2013). . . . . . . . . . . . . . . . . . 19

*Campbell v. Pricewaterhouse Coopers,*
253 F.R.D 586 (E.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Campbell v. Pricewaterhouse Coopers ("Campbell II"),*
287 F.R.D 615 (E.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Ching v. Siemens Indus.,*
2013 U.S.Dist. LEXIS 169279, (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . 19

*Custom LED, LLC v. eBay, Inc.,*
2013 U.S.Dist. LEXIS 12202 (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . 15

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-25

*Harris v. Vector Mktg.Corp.,*
2011 U.S.Dist. LEXIS 48878-23-24 (N.D.Cal.2011).. . . . . . . . . . . . . . . . 11

*In Re Tableware Antitrust Litig.,*
488 F.Supp. 2d 1078,1079 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . 11, 15

*Knight v. Red Door Salons, Inc.,*
*2009 U.S.Dist.LEXIS 11149 (N.D.Cal. 2013).* . . . . . . . . . . . . . . . . . . . . 20

*Mazza v. Am.Honda Motor Co., Inc.,*
666 F. 3rd. 581, 589 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Officers for Justice v. CM! Serv. Comtn of City & City of San Francisco.,*
688 F.2d 612, 625 (9th Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Rodriguez v. W. Publg. Corp.,*
563 F.3d. 958 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370, 1375 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Van Vranken v. Atlantic Richfield Co.,*
901 F.Supp. 294,299  (N.D.Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Vero v. Aaron Bros.,*
U.S. Dist. LEXIS 178511 (N.D.Cal 2013). . . . . . . . . . . . . . . . . . . . . . . . 19

*Villegas v. J.P Morgan Chase & Co.,*
2012 U.S. Dist. LEXIS 166704 (N.D. Cal. 2012). . . . . . . . . . . . . . 11-12, 15

iii

*Wang v. Chinese Daily News, Inc.,*
   231 F.R.D 602, 612 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**STATUTES**

Federal Rules of Civil Procedure, Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

iv

## I.   INTRODUCTION

Plaintiffs Jennifer Pae and Alexandra Sheldon ("Plaintiffs") seek preliminary approval of a settlement on behalf of themselves and a Class comprised of all individuals employed as non-exempt front-of-the-house employees in California at all of Defendants' Fox Restaurant Concepts, LLC, FRC True Food SMP, LLC, FRC True Food SDFV, LLC, and FRC True Food NBFI, LLC ("Defendants", with Plaintiffs, the "Parties")  True Food Kitchen restaurant locations between July 22, 2012 and the date of preliminary approval ("Class Members").

Plaintiffs allege that they and other Class Members were required to work off-the-clock for Defendants at True Food Kitchen at the end of their shifts. Moreover, because the off-the-clock work would often begin after working a full six hours, Plaintiffs and Class Members were also entitled to a meal break that was not provided.  Additionally, meal breaks (for shifts scheduled for over 6 hours) and rest breaks generally were often interrupted by Defendants as the restaurants were often poorly staffed.  Finally, Plaintiffs and Class Members had to replace some of their work related equipment, such as worn out aprons and a scheduling app, themselves, all without reimbursement from Defendants.  Consequently, Plaintiffs and Class Members were denied their minimum wages, overtime wages, accurate wage statements, timely payment of wages, and reimbursed business expenses.  Plaintiffs therefore allege claims for unpaid wages, minimum wages, overtime pay, interest thereon, wage statement and waiting time penalties, and other equitable relief, as well as reasonable attorneys' fees and costs.

The main terms of the Settlement are as follows:

a. Defendants agree to pay nine hundred thousand dollars and zero cents ($900,000.00) ("Gross Settlement Payment Amount") to settle the Action, which shall include attorneys' fees and costs, the Class Representative Enhancement Awards, and court-approved costs of settlement administration.

1

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof**

b. This is not a Claims-Made Settlement.  Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement by submitting valid and timely exclusion forms to the Settlement Administrator, as set forth below and as explained in the Notice of Class Action Settlement ("Notice").

The Settlement Agreement, including all exhibits, is attached as Exhibit "1" to the Declaration of Thomas W. Falvey ("Falvey Decl."), filed herewith.

## II.   FACTUAL BACKGROUND

This is a class action suit brought by Plaintiffs Jennifer Pae and Alexandra Sheldon seeking to represent current and former front-of-the-house employees at Defendants' California True Food Kitchen restaurants.  Plaintiffs allege a variety of wage and hour violations on the part of Defendants.

First, Plaintiffs allege that they were not properly provided with meal and rest breaks by Defendants.  Plaintiffs and Class Members were required to complete meal break waiver forms, and were thereafter generally scheduled for six hour shifts.  If Plaintiffs and Class Members worked no more than six hours, they would have been entitled to one rest break.  However, Defendants seldom, if ever, provided for a duty-free rest break.  Defendants would try and schedule as few front-of-the-house staff as possible for any given shift.  However, because scheduling for a shift necessarily occurs before the shift itself, Defendants often did ended up under-staffing shifts with front-of-the-house employees, such as servers.  Declaration of Michael H. Boyamian ("Boyamian Decl."), ¶ 8.

When a shift was understaffed, Plaintiffs and Class Members would be expected to work through their rest break.  Even though it was never written explicitly by Defendants in any employee manual, Plaintiffs and Class Members understood perfectly well that it would be wholly inappropriate to, e.g., spend 10 minutes outside on a break when customers were having their dishes go cold because there were not enough servers to cover all tables.

1    Certain shifts also were scheduled for 8 hours.  On such shifts, Plaintiffs and
2    Class Members would be required to take a 30-minute unpaid meal break.
3    However, just as with rest breaks, management would expect Plaintiffs and Class
4    Members to assist during their unpaid meal breaks, particularly if the restaurant
5    was busy during that shift.
6        On shifts that went beyond their scheduled time of 6 or 8 hours, Plaintiffs
7    and Class Members would regularly be required to work off-the-clock.  In the case
8    of the six hour shift, Plaintiffs and Class Members would still have to keep
9    working off-the-clock because otherwise, their meal break waiver would no longer
10   be effective at that point and they simply could not keep working without
11   incurring a meal break violation.  Similarly, Plaintiffs and Class Members could
12   not keep working after eight hours because to do so would require that employee
13   to incur overtime hours - something that Defendants very much wanted to avoid.
14       Particularly at the end of their shifts after they had already clocked out,
15   Plaintiffs and Class Members would be required to complete side work such as
16   rolling silverware (wrapping napkins around cutlery), sweeping the dining room
17   floor, restocking the service area or wiping down work counters, stocking and
18   cleaning the cupboard, restocking condiments, restocking plates, and cleaning up.
19       Moreover, each True Food Kitchen restaurant was headed by a General
20   Manager.  Part of the General Manager's compensation was tied to the
21   profitability of the restaurant.  One metric measured by True Food Kitchen and
22   that factored into the profitability of the restaurant was the labor budget.  As a
23   result, if a General Manager chose to schedule more staff members on each shift to
24   ameliorate the above under-staffing issues, he or she risked exceeding the labor
25   budget, impacting profitability, and thus ultimately hurting his or her own pay.
26   For this reason, among others, Defendants' local management was not particularly
27   concerned if True Food Kitchen was not complying very well with California's
28   wage and hour laws.  Boyamian Decl., ¶ 9.

3

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;**
**Memorandum of Points and Authorities in Support Thereof**

1  Finally, True Food Kitchen would not reimburse Plaintiffs and Class
2  Members for their replacement aprons, True Food Kitchen t-shirts, and non-stick
3  shoes that they would have to wear.  Further, Plaintiffs and Class Members had to
4  purchase an app called HotSchedules in order to access their schedules, but this
5  expense was also not paid for by Defendants.  Boyamian Decl., ¶ 10.

6  **III.   PROCEDURAL BACKGROUND**

7  This action was filed on July 22, 2016.  Plaintiff Jennifer Pae filed a
8  proposed class action alleging various wage and hour violations in the Los
9  Angeles County Superior Court against all Defendants.  This action was removed
10 to the Central District of California on September 16, 2016.  Plaintiff Alexandra
11 Sheldon filed a separate PAGA-only action on April 26, 2017 in Los Angeles
12 County Superior Court.  After the Parties reached a global settlement in principle
13 of the claims from both suits earlier this year, the complaint in this action was
14 amended to add Plaintiff Alexandra Sheldon as a Class Representative, and to add
15 her PAGA claims to this suit.  The operative First Amended Complaint with both
16 Plaintiffs Pae and Sheldon was filed on July 10, 2018.

17 The operative complaint alleges claims for (1) Unpaid Wages (California
18 Labor Code §§ 216, 1194); (2) Failure to Pay Minimum Wage (Labor Code §
19 1194 et seq); (3) Failure to Pay Overtime Compensation (Labor Code §510); (4)
20 Failure to Furnish Accurate Wage Statements (Labor Code § 226); (5) Waiting
21 Time Penalties (Labor Code §§201-203); (6) Failure to Provide Meal & Rest
22 Periods (Labor Code §§ 226.7, 512); (7) Indemnification (Labor Code §§ 2800
23 and 2802); (8) Unfair Competition (California Business and Professions Code §
24 17200 *et seq.*); and (9) Private Attorneys General Act of 2004 (Labor Code §
25 2698, *et seq.*).

26 Plaintiffs' Counsel has conducted a thorough investigation into the relevant
27 facts and legal claims.  Plaintiffs have propounded and responded to written
28 discovery.  Plaintiffs have taken depositions of both individual managers and

4

those designated by Defendants as their F.R.C.P. Rule 30(b)(6) witnesses. Plaintiffs analyzed Defendants' voluminous time punch records with the assistance of an expert statistician.  Plaintiffs spoke to dozens of Class Members and gathered declarations from those who were willing.  Prior to reaching this settlement, Plaintiffs moved for class certification and opposed Defendants' motion for partial summary judgment.  This settlement was reached before the Court issued its ruling on class certification and summary judgment.  Boyamian Decl., ¶¶ 6, 8.

Mediation was conducted with respected neutral Steven J. Serratore, on April 4, 2018.  Counsel for the Parties fully briefed their positions to the mediator. Even after a full day of extensive arms-length negotiations by the Parties, they were unable to reach a settlement.  Only through continued negotiations in the days after the mediation did the Parties reach the settlement in principal which ultimately lead to the final agreement.  Falvey Decl., ¶ 12; Boyamian Decl., ¶ 13.

Based on an independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Class Members, in light of all known facts and circumstances, including the risk of significant delay, the risk that if this matter is litigated a Class may not be certified by the Court or that it may later be decertified, the risk that Defendants will prevail on their defenses, as well as potential appellate issues.  Falvey Decl., ¶ 10.

## IV.    TERMS OF THE SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement, signed by the Parties, and attached as Exhibit "1" to the Falvey Decl. A summary of the settlement's primary terms are as follows:

///

///

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

### A.   Class Definition

The Class is comprised all individuals employed as non-exempt front-of-the-house employees in California at all of Defendants' True Food Kitchen restaurant locations between July 22, 2012 and the date of preliminary approval.

### B.   Settlement Amount

Defendants have agreed to pay $900,000.00 to fully resolve all claims in the Lawsuit, including claims by eligible Settlement Class Members, attorneys' fees, costs, Settlement Administration Costs, and the Class Representative's service award.

### C.   Allocation of Payments and Distribution to Class Members

This is not a claims-made settlement.  Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement by submitting valid and timely exclusion forms to the Settlement Administrator, as set forth below and as explained in the Notice.

Payments to Class Members shall be allocated as 20% for unpaid wages, for which IRS Forms W-2 will be issued, and 80% as penalties and interest, for which IRS Forms 1099-MISC will be issued to Class Members by the Settlement Administrator.

The Settlement Administrator will calculate the individual settlement awards to eligible Class Members.  In order to calculate each Class Member's share of the settlement, the Settlement Administrator will use data provided by Defendants concerning the number of workweeks that each Class Member worked during the Class Period.  The respective weeks worked during the Class Period for each Class Member will be divided by the total weeks worked for all Class Members during the Class Period, resulting in a payment ratio for each Class Member.  Each Class Member's payment ratio will then be multiplied by the Net Settlement Amount to determine his or her estimated Individual Settlement Award.

Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof

Checks issued to Class Members pursuant to this Settlement shall remain negotiable for a period of sixty (60) days from the date of issuance. Class Members who fail to negotiate (i.e., cash or deposit) their check(s) in a timely fashion shall remain subject to the terms of this Settlement. After the expiration of sixty (60) days, the sum of any un-cashed/un-deposited checks shall be issued to the Los Angeles Regional Food Bank as the cy pres beneficiary.

Defendants' data will be presumed to be correct. All compensation disputes will be resolved and decided by the Settlement Administrator and the Settlement Administrator's decision on all compensation disputes will be final and non-appealable. Under no circumstance will the Gross Settlement Amount or any portion thereof revert back to Defendants.

### D.   Attorneys' Fees, Costs, and Enhancement Fees

Class Counsel may apply for, and Defendants will not oppose, an award of attorneys' fees in an amount up to one-fourth (25%) of the Gross Settlement Amount, i.e. $225,000, and costs of up to $30,000, all of which shall be paid exclusively from the Gross Settlement Amount, and will compensate Class Counsel for all of the work already performed, and expenses already incurred, in the Action and all work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, administering the Settlement, ensuring that the Settlement is fairly administered and implemented, obtaining dismissal of the Action with prejudice, and defending against any appeals, as well as all associated expenses.

The Class Representative Enhancements are in addition to the Plaintiff's individual settlement award. In exchange for the Class Representative Enhancements, the Class Representatives must execute a general release in favor of Defendants. Defendants will not oppose Plaintiffs' enhancement petition so long as it does not exceed $15,000 for Plaintiff Jennifer Pae and $10,000 for Plaintiff Alexandra Sheldon. In addition to providing additional consideration for

7

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

Plaintiffs' execution of the general release, the Class Representative Enhancements is meant to compensate Plaintiffs for their instrumental role in pushing this litigation forward and putting their name on a public lawsuit, something that ordinary Class Members were not asked to do. Plaintiff Jennifer Pae's enhancement amount is greater then Plaintiff Alexandra Sheldon's because the former was deposed while the latter had not yet had her deposition taken when this matter settled. In the event that the Class Representatives are not awarded the requested amounts, in whole or in part, no part of the requested award shall revert to Defendants, but instead shall revert to the Net Settlement Amount.

### E.    Costs of Settlement Administration

The Settlement Administrator shall be entitled to payment, from the Gross Settlement Amount, for the reasonable costs of administering this settlement, subject to Court approval. Here, the costs of administering the settlement approval are very likely to remain $23,500, pursuant to the flat-fee bid provided by CPT Group. *See* CPT Group Bid, attached as Exhibit "2" to the Falvey Decl.

### F.    PAGA Penalties

Under the terms of the settlement, $20,000 of the Gross Settlement Amount will be allocated to penalties under the Private Attorneys General Act. Of this $20,000 amount, 75% or $15,000 will be paid to California's Labor and Workforce Development Agency. The remaining 25% or $5,000 will be added to the Net Settlement Amount for distribution to Class Members.

### G.    Administration of Notice and Opt-Out Process

This Settlement is not a claims-made settlement. Class Members do not need to submit claims in order to participate in the Settlement. Within fourteen (14) calendar days of preliminary approval, Defendants will provide the Settlement Class's identifying information to the Settlement Administrator. In the event there is missing contact information, the Parties will make their best efforts to obtain and provide the approximate, last-known data/information. Class

8

Members will have forty-five (45) days in which to postmark objections, disputes, and/or requests for exclusion.

The Notice, attached to the Settlement Agreement as Exhibit "B," shall be sent by the Settlement Administrator to the Class Members, by first class mail, within thirty (30) calendar days following the preliminary approval of this settlement.  The Notice shall notify each Class Member of the number of work weeks within the Class Period and their estimated share of the settlement funds.

Those individuals who do not submit valid and timely requests for exclusion shall be deemed "Settlement Class Members".

With the filing of their final approval motion, Class Counsel shall provide the Court with a declaration by the Settlement Administrator specifying the due diligence it has undertaken with regard to the mailing of the Notice.

**H.    Disputes, Requests for Exclusion, and Objections**

The Notice shall provide forty-five (45) days from the mailing date of the Notice for each Class Member to (1) dispute the amount of workweeks worked by a Class Member during the Class Period or the calculation of an individual Class Member's Settlement Payment; (2) opt out of the Settlement; or (3) object to the settlement.

If a Class Member wishes to dispute the amount of workweeks worked by a Class Member during the Class Period or the calculation of an individual Class Member's Settlement Payment, the Class Member must submit a written, signed dispute along with supporting documents to the Settlement Administrator at the address provided on the Notice within thirty (30) calendar days of the postmark date of the Notice.  The Settlement Administrator, in its sole discretion and after consulting with Class Counsel and Defense Counsel, will resolve the challenge and make a final and binding determination without hearing or right of appeal.

The Settlement Administrator shall report to Class Counsel and Defense Counsel, in summary or narrative form, the substance of any discrepancies

9

submitted by the Class Member and Defendants' records.  The Settlement Administrator and Class Counsel shall be granted reasonable access to Defendants' records that relate to the discrepancies.  The Settlement Administrator shall have full authority to resolve any such discrepancies.

No opt out request will be accepted if postmarked to the Settlement Administrator more than forty-five (45) calendar days after the date the Notice was mailed to the Class Member.  All original opt out requests shall be sent directly to the Settlement Administrator at the address indicated on the Notice and the Settlement Administrator will forward such opt out requests to Class Counsel and Defense Counsel.  The Settlement Administrator will certify jointly to Class Counsel and Defense Counsel the number of all Class Members who have submitted opt out requests and/or objections in response to the Notice.

Defendants have the option of withdrawing from the settlement if ten percent (10%) or more of the Class Members opt out of the Settlement.

Any Class Member wishing to object to the Court's approval of this Settlement shall follow the procedures set forth herein and shall submit any such written objections, memorandums of points and authorities in support thereof, and/or requests to appear at the final approval hearing, with the Settlement Administrator no later than forty-five (45) days after the mailing of the Notice.

A Class Member who has submitted an opt-out request may not submit any objections to the Settlement.  Any Class Member who fails to file a timely written objection shall be foreclosed from objecting to this Settlement.  Class Counsel and Defense Counsel shall file any response to any objections filed by objecting Class Members at least ten (10) calendar days before the Final Approval Hearing.

## I.    Release of Claims

Upon the Final Approval Date, Class Members who do not timely opt out shall fully release and discharge the Releasees from all claims, causes of actions, or damages, which have been or could have reasonably been alleged in the suit.

## V.    LEGAL ARGUMENT

### A.    Preliminary Approval of the Settlement is Appropriate.

The dismissal or compromise of a class action requires court approval.  Fed. R. Civ. P. 23(e).  Approval involves a two-step process in which the Court first determines whether a proposed class action settlement warrants preliminary approval and, if so, directs that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp. (ND.* Cal. 2011) 2011 U.S. Dist. LEXIS 48878, 23-24. Approval of a class action settlement rests in the discretion of the Court, which should ultimately determine whether the settlement is fundamentally fair, adequate, and reasonable to the Class.  *See Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1375.

A court should grant preliminary approval of a settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *See In re Tableware Antitrust Litig.* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079.  Courts should also apply their discretion in light of the judicial policy favoring settlement of complex class action litigation. *See, e.g., Officers for Justice v. CM! Serv. Comtnn of City & Cnty. of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625 ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . .").  As discussed below, application of the relevant factors to this case supports preliminary approval.

### 1.    The Settlement is the Product of Informed, Non-Collusive Negotiation.

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive. *See*

11

*Villegas v. J.P. Morgan Chase & Co.,* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704, *1546.  Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the parties.  On April 4, 2018, the Parties attended a full-day mediation with experienced mediator, Steven J. Serratore.  The Parties engaged in protracted negotiations and were ultimately able to reach an agreement that was based fundamentally upon the mediator's advice and guidance.  While a settlement figure was agreed upon by the Parties in the days after the mediation, negotiations as to the specific terms of the agreement continued for several weeks thereafter.  Falvey Decl., ¶¶ 11-12; Boyamian Decl., ¶ 13.

Here, the Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case.  Class Counsel have a great deal of experience in class action litigation and focus on employment wage and hour matters.  At the time of settlement, the Parties had comprehensive information on the claims involved in the suit due to the preparation and briefing with Plaintiffs' Motion for Class Certification and Defendants' Motion for Partial Summary Judgment.  As such, the mediation occurred after each side had conducted an extensive investigation of the factual allegations involved in this case, and understood very well the strengths and weaknesses of their respective position.  Boyamian Decl., ¶¶ 12-13; Declaration of Alex Hartounian ("Hartounian Decl."), ¶ 22.

## 2. The Strength of Plaintiff's Case and the Risk of Further Litigation Support Preliminary Approval.

Plaintiffs allege that Defendants failed to properly compensate Class Members for all hours worked at the True Food Kitchen restaurants.  Plaintiffs also allege that Defendants did not provide meal and rest breaks in conformity with California law due to chronic understaffing, and failed to reimburse all business expenses.  Further litigation carries numerous risks and obstacles for

12

1  Plaintiffs and Class Members.  Falvey Decl., ¶ 13; Boyamian Decl., ¶¶ 14-15.

2      First, Plaintiffs may not be able to certify a class of front-of-the-house

3  employees under Rule 23(b).  Rule 23(b) provides that class certification is

4  appropriate where "...the questions of law or fact common to the members of the

5  class predominate over any questions affecting only individual members, and...a

6  class action is superior to other available methods...".  Fed. R. Civ. P. 23(b)(3).

7      Plaintiffs can show through common evidence that Defendants typically

8  scheduled Class Members for six hour shifts in line with their meal break waiver

9  forms.  Moreover, Plaintiffs can show that they and Class Members were clocking

10 out from work at or near the sixth or even the eight hour mark but continuing to

11 work off-the-clock by either continuing to wait on tables or completing the

12 required "side work" and then "cashing out."  Plaintiffs submitted substantial

13 evidence in this regard with their Motion for Class Certification.  Boyamian Decl.,

14 ¶ 8.

15     However, in opposing Plaintiffs' Motion for Class Certification, Defendants

16 submitted their own evidence which allegedly showed that Plaintiffs and Class

17 Members were not working off the clock, or that the experiences of the front-of-

18 the-house employees varied.  If the Parties had not reached this settlement and the

19 Court found Defendants' evidence to be credible, no class would be certified for

20 off the clock work.  Hartounian Decl., ¶ 23.

21     Similarly, Plaintiffs submitted evidence with their Motion for Class

22 Certification that they and Class Members were also unable to take their rest

23 breaks and meal breaks (when ostensibly provided) due to the amount of work that

24 they were responsible for completing, the chronic understaffing at True Food

25 Kitchen restaurants, and local management's financial incentive to keep their

26 restaurants understaffed.  Boyamian Decl., ¶ 8.  On all these points, Defendants

27 cited contrary evidence.  When Plaintiffs pointed to a policy of Defendants that

28 supported their claims, Defendants would cite another.  When Plaintiffs proffered

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

1   various declarations of Class Members that were in accord with Plaintiffs'

2   statements, Defendants submitted their own employee declarations.

3        As a result, while Plaintiffs are confident in their claims, it cannot be said

4   that Defendants' presented no contrary evidence to the Court.  Thus, in the

5   absence of settlement, the Court's ruling on the pending Motion for Class

6   Certification and Defendants' Motion for Partial Summary Judgment will come

7   down to a credibility determination by the Court.  Consequently, through the

8   compromise of this settlement, the Parties are each assured of certainty with the

9   outcome, and avoid, from Plaintiffs' and the Class's perspective, potentially losing

10  all or some of their claims, and from Defendants' perspective, of this becoming a

11  much more advanced suit.  Hartounian Decl., ¶ 23.

12       In addition, with regard to Plaintiffs' claims for wage statement and waiting

13  time penalties, both claims are derivative of Plaintiffs' primary off-the-clock and

14  meal and rest break allegations.  Thus, Plaintiffs would recover nothing for

15  themselves, or the Class, if the underlying claims are unsuccessful.  Boyamian

16  Decl., ¶ 11.

17       Finally, with regard to waiting time penalties, Defendants might argue that

18  there was a good faith dispute regarding whether Class Members were owed any

19  wages at the time their employment ended.  *See* Cal. Code Regs. Tit. 8, § 13520

20  (good faith dispute, based in law or fact, precludes award of waiting time

21  penalties).  Defendants might also contend that to the extent that they failed to pay

22  any wages to Class Members, their failure was not willful within the meaning of

23  California Labor Code § 203.  *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App.

24  4th 1157, 1201 (2008).  In regards to wage statements, Defendants might argue

25  that the statute provides for penalties only if Plaintiffs prove that Defendants'

26  violations were both knowing and intentional.  Cal. Lab. Code § 226(e).

27  Therefore, even assuming *arguendo* that Plaintiffs can establish a failure to pay

28  wages, Plaintiffs may be unable to demonstrate that Defendants' failure to include

14

overtime on their earnings statement was both knowing and intentional.  Without this proof, Plaintiffs cannot recover penalties or fees under Section 226(e).

### 3.    The Settlement Falls Within the Range of Possible Approval.

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer", while taking into account the risks of continuing litigation. *See In re Tableware Antitrust Litig.* 484 F.Supp.2d at 1080.  Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice* 688 F.2d at 624, (internal quotations and citation omitted).  "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas,* 2012 - U.S. Dist. LEXIS 166704 at 96 (internal quotations and citations omitted).

Here, the Settlement is fair, adequate, and well within the range of possible approval.  Without conceding that any adverse rulings would be justified, Plaintiffs recognize the risk of such outcomes as described above.  Falvey Decl., ¶ 13; Boyamian Decl., ¶¶ 13-15.  If Defendants are able to prove that Plaintiffs and Class Members were properly provided with meal and rest breaks, were paid for all hours worked, and did not incur any expenses that should have been compensated, then the instant claims in the suit would be worth very little if anything.  As far as the Class is concerned, if Defendants are able to defeat certification by, for example, showing a lack of commonality within the Class, this suit would be drastically limited, encompassing only the named Plaintiffs' claims and no other Class Members.  Boyamian Decl., ¶¶ 14-15.

1        If a class is certified and Plaintiffs are able to demonstrate that they and
2   Class Members were not properly paid for all hours worked, were not adequately
3   provided with meal and rest breaks, and were not reimbursed for all business
4   expenses, then their damages would be based on the degree to which these wage
5   and hour violations were occurring.

6        Based on significant outreach efforts by Class Counsel in connecting
7   directly with Class Members, Class Counsel are able to estimate the following
8   amounts.

9        First, there are approximately 2,250 days in the Class Period (i.e. July 22,
10  2012 to the present).  During that time, Defendants greatly expanded their True
11  Food Kitchen restaurant chain in California.  On average, for this approximately
12  six year period, Class Counsel estimates that there would be 275 front-of-the-
13  house employees working on any given day.  Boyamian Decl., ¶ 17. This figure
14  would have been lower near the start of the Class Period when there were only
15  three True Food Kitchen restaurants in California, and it would be higher now that
16  there are eight True Food Kitchen Restaurants.  Half of these restaurants opened in
17  the last two years.

18       In preparing for the Motion for Class Certification, Class Counsel retained
19  an expert statistician to examine the data provided by Defendants.  Plaintiffs'
20  statistician found that on 9.1% of all shifts, a meal break violation had occurred.
21  Plaintiffs believe this figure is very conservative because Plaintiffs and Class
22  Members frequently described a practice whereby managers would alter time-
23  clock entries to mask the fact that a meal break violation had occurred (e.g.,
24  because it was taken too late in the shift).  Because Class Counsel believe this
25  time-clock altering was occurring more than half of the time, Plaintiffs believe that
26  a 20% meal break violate rate is a fairer figure to use in calculating the meal break
27  penalties.  *See* Boyamian Decl., ¶ 17.

28  ///

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

As front-of-the-house staff were generally not well paid, often earning minimum wage, Class Counsel believe that over the six year Class Period, a $10 per hour rate is proper to use for a damages analysis. Boyamian Decl., ¶ 17. Thus, if on the approximately 2,250 days that exist in the Class Period, if 275 Class Members were working on each day, and 20% of these individuals incurred a meal break violation, then with the one hour of premium pay for non-compliant meal breaks, Class Members would be owed **$1,237,500** in meal break penalties (= 2,250 days * 275 Class Members per day * 20% violation rate * $10 penalty rate).

True Food Kitchen did not track the rest breaks of Class Members. As a result, Plaintiffs' statistician had no comparable records to do such an analysis on for rest break violations. Nevertheless, Plaintiffs believe that a similar violation rate was occurring with rest breaks as with meal breaks. On this basis, Class Counsel estimates that Plaintiffs and Class Members are owed **$1,237,500** in meal break penalties (= 2,250 days * 275 Class Members per day * 20% violation rate * $10 penalty rate).

For the unpaid wages claim, Class Counsel estimates that Class Members spent an average of 15 minutes working off-the-clock each day, when accounting for work done after a shift was over and for work done during meal and rest breaks. As a result, based upon approximately 2,250 work days in the Class Period, 275 Class Members working each day, 15 minutes of unpaid time, and a $10 per hour hourly rate, Class Members are owed $1,546,875 in unpaid wages. (= 2,250 days * 275 Class Members per day * 0.25 hours off-the-clock each day * $10 penalty rate). Most shifts did not last 8 hours. Off-the-clock overtime would only be incurred if a Class Member's shift was in excess of 8 hours. If even 1 out of 5 shifts was scheduled for 8 hours, then $154,687.50 must be added to the above figure to account for the overtime rate ($1,546,875 unpaid wages * 20% of shifts * 0.5 to account for OT premium). Collectively then, Plaintiffs and Class Members are owed **$1,701,562.50** in unpaid straight time and overtime wages (=

17

1  $1,546,875 straight time wages + $154,687.50 for OT premium for 20% of shifts).

2      With respect to unreimbursed business expenditures, Class Counsel came to

3  the conclusion that, on average, Class Members incurred $100 with such expenses

4  during their time with True Food Kitchen.  This principally covered the various

5  articles of clothing that Plaintiffs and Class Members would have to replace at

6  their own cost, along with the HotSchedules app.  As a result, for the

7  approximately 3,000 Class Members, this claim would be worth about **$300,000**

8  (= 3,000 Class Members * $100).

9      The above captures the most certain components of the damages at issue in

10  this litigation, and captures the damages from Plaintiffs' core claims.  Boyamian

11  Decl., ¶ 18. Added together, Plaintiffs are able to show at least **$4,476,562.50** in

12  damages for the underlying claims ($1,701,562.50 for unpaid straight time and

13  overtime + $1,237,500 for missed meal breaks + $1,237,500 for missed rest breaks

14  + $300,000 in unpaid business expenditures).  In addition, these core amounts

15  would be increased by inaccurate wage statement and waiting time penalties,

16  depending on which specific claims Plaintiffs and the Class ultimately prevailed

17  on.  Moreover, the Court would have the discretion to set an amount for PAGA

18  penalties if Plaintiffs and the Class were to prevail on the underlying claims.

19      Nevertheless, the above figures must be discounted for a settlement at this

20  stage in the proceedings because there is no certainty that the Court would

21  ultimately grant Plaintiffs' Motion for Class Certification, and that a jury would

22  come out in favor of Plaintiffs and the Class.  If the Court were to deny class

23  certification, then the claims of Class Members other than Plaintiffs would

24  effectively be $0 as their involvement in the suit would end.  As set forth above,

25  for the purposes of settlement only, Plaintiffs concede that this case faces

26  significant hurdles at both the certification and liability phases of the litigation.

27  Falvey Decl., ¶ 13; Boyamian Decl., ¶ 18.

28  ///

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof**

Based on the foregoing, the Settlement will result in a fair and reasonable award to Class members in light of the litigation risks. The net amount to be paid to the Class under the proposed Settlement (after payment of Class Counsel's attorneys' fees and costs, Administration Costs, the Class Representative Enhancements) will be at least $596,500. The average Class Member payout under this amount would be approximately $198.83. Falvey Decl., ¶ 7. Thus, the Settlement avoids the risks of litigation while ensuring that Class Members receive consideration for a release of their claims. The Settlement also affords relief to Class Members who likely would never have filed individual claims.

Under the circumstances the amount of the settlement is fair, adequate and reasonable. *See Vero v. Aaron Bros.,* (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 178511 (granting preliminary approval of settlement of wage and hour claims where the average recovery would be between approximately $28 and $45); *Bautista v. Harvest Management Sub,* (C.D. Cal. 2013) No. 2:12-cv-10004 (ECF No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-member class).

The plan of allocation is also fair and reasonable. The Settlement provides that the settlement fund shall be allocated based on the number of workweeks worked during the Class Period by Class Members, thus assigning an amount to each Class Member derivative of the amount of work they performed for Defendants. *See, e.g., Ching v. Siemens Indus.,* (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 169279, at *19 (granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).

### 4. Plaintiffs' Request for Attorneys' Fees and Costs is Reasonable.

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees in an amount not to exceed $225,000 (25% of the Settlement Amount) and an award of litigation expenses in

19

an amount not to exceed $30,000.  Class Counsel submit that these amounts are fair and reasonable given their significant investment of time and expense over the last two years, their contingent fee risk, and the result that they have achieved. The fees that will be requested are based on the amount that will be paid out to the Class, and are within the range of reasonableness established by Ninth Circuit authority.  *See, e.g., Knight v. Red Door Salons, Inc.,* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 11149, *17 (observing that class action fee awards average around one-third of the recovery) (citations omitted).  Moreover, because the fees that Plaintiffs' Counsel will be requesting match the Ninth Circuit's benchmark of 25% of a common fund, the Settlement is also eminently reasonable in this respect.  *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).

> **5.    Plaintiffs' Request for an Enhancement Award for the Class Representatives is Reasonable.**

Service or incentive awards are typical in class action cases.  *Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 958.  In evaluating incentive awards, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken V. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 299.  Here, Class Counsel believes that the Class Representative Enhancement Awards of $15,000 for Plaintiff Jennifer Pae and $10,000 for Plaintiff Alexandra Sheldon is consistent with a fair, just and adequate settlement.

Plaintiffs initiated this case and sought counsel to represent the proposed Class.  Plaintiffs met with Class Counsel and provided documentary evidence relevant to the claims in the case, discussed case strategy and assisted Class Counsel in evaluating settlement options.  Falvey Decl., ¶ 8.  Plaintiffs also risked

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof**

their own professional reputation by suing their former employer.  Any potential future employer who searches the internet or runs a background check on Plaintiffs will discover this fact.  In a competitive job market, this factor may weigh heavily against them.  Therefore, Plaintiffs have also undertaken risks with respect to their future employment prospects.  Falvey Decl., ¶ 8.  Finally, Class Counsel's request for an award for Plaintiff Jennifer Pae is higher because she was also deposed in this matter.

Plaintiffs will each provide a supporting declaration at final approval describing their efforts in this case, the amount of time spent serving the class, and the risks they incurred.

### 6.    The Settlement Administrator Costs are Reasonable.

Plaintiffs propose appointing CPT Group as the Settlement Administrator in this case.  Class Counsel obtained three bids from different settlement administrators of settlement administration costs in this case.  Class Counsel has elected to use CPT Group as the Settlement Administrator because they offered a competitive bid and have substantial experience in administering class action settlements.  Falvey Decl., ¶ 19. The CPT Group estimate is attached to the Falvey Declaration as Exhibit "2".  The estimated Settlement Administration Costs of $23,500 for 3,000 Class Members are reasonable as compared to the $900,000 value of the settlement.

### B.    The Class Should be Provisionally Certified.

Plaintiffs request that the Court provisionally certify the Rule 23(b)(3) class for settlement purposes.  The purpose of provisional class certification is to facilitate distribution to proposed Class Members of notice of the terms of a proposed settlement and the date and time of the final approval hearing.  *See Manual for Complex Litigation, Fourth §§* 21.632-33.  For purposes of this Settlement only, Defendants that the proposed Class satisfies the requirements for class certification set forth in Rule 23. Settlement Agreement ¶ 9.

21

1          **1.     Standards Governing Approval of Settlement Classes.**

2          When considering a motion for preliminary approval of a settlement, the

3    Court must make a threshold determination as to whether the proposed settlement

4    class meets Rule 23 requirements. *See Hanlon v. Chrysler Corp.* (9th Cir. 1998)

5    150 F.3d 1011, 1019-20.  Specifically, the Court must determine whether the

6    proposed class satisfies the requirements that (1) the class is so numerous

7    that joinder would be impracticable; (2) there are questions of law or fact common

8    to the class; (3) the named Plaintiffs' claims are typical of the claims of the

9    proposed class; and (4) Plaintiffs and their counsel will adequately and fairly

10   represent the interests of the class. *Id.* at 1019.  Additionally, the action must be

11   maintainable under Fed. R. Civ. P. 23(b) (1), (2), or (3).  *Id.* at 1022.  Based on

12   these standards, as further discussed below, the Court should certify the proposed

13   Settlement Class for settlement purposes.

14         **2.     The Class Satisfies the Requirements of Rule 23(a).**

15         The proposed Class satisfies all requirements of Rule 23(a).

16         First, it is sufficiently numerous to satisfy Rule 23(a)(1). "While there is no

17   set number of members required, courts have generally found classes numbering in

18   the hundreds to be sufficient to satisfy the numerosity requirement." *Campbell v.*

19   *PricewaterhouseCoopers* (E.D. Cal. 2008) 253 F.R.D. 586, 594.  In this case, the

20   putative class consists of approximately 3,000 Class Members who worked for

21   Defendants during the Class Period.  This will easily satisfy the numerosity

22   requirement.  Falvey Decl., ¶ 7.

23         Second, Rule 23(a)(2) is satisfied because there are questions of law and

24   fact common to the proposed Class.  *See Mazza v. Am. Honda Motor Co., Inc.* (9th

25   Cir. 2012) 666 F.3d 581, 589 ("Commonality only requires a single significant

26   question of law or fact.").  The showing required to satisfy commonality is

27   minimal.  *Hanlon, 150* F. 3d at 1020.  The presence of a single common question

28   that will "drive the resolution of the litigation" is sufficient *Campbell v.*

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;**
**Memorandum of Points and Authorities in Support Thereof**

1  *PricewaterhouseCoopers, LLP* (E.D. Cal. 2012) 287 F.R.D. 615, 620 (hereinafter

2  *Campbell II*).  Here, common factual and legal issues include whether Class

3  Members were required to keep working after clocking out of their shifts, work

4  through their meal and rest breaks, and purchase their own gear for use in the True

5  Food Kitchen restaurants.  These issues satisfy the commonality requirement of

6  Rule 23(a)(2).  Falvey Decl., ¶ 13.

7      Third, the typicality requirement of Rule 23(a)(3) is satisfied because the

8  claims raised by Plaintiffs are typical of the claims asserted on behalf of the Class.

9  Typicality is established if representative claims are "reasonably co-extensive with

10  those of absent class members; they need not be substantially identical."  *Hanlon*,

11  150 F.3d at 1020.  Plaintiffs' claims arise out of the same factual and legal

12  circumstances as the claims of other Class Members: Like all Class Members,

13  Plaintiffs claim to have had to work off-the-clock and through meal and rest

14  breaks, and to also have purchased their own equipment to work at True Food

15  Kitchen.  Because Defendants' policies and procedures were uniform and applied

16  to all front-of-the-house staff, Plaintiffs' claims against Defendants are typical of

17  those of the Class.  Falvey Decl., ¶ 13.

18      Fourth, Plaintiffs' counsel satisfy the adequacy requirement of Rule

19  23(a)(4), as well as the requirements of Rule 23(g).  Rule 23(a)(4) requires that the

20  Parties fairly and adequately protect the interests of the class.  The adequacy

21  requirement is met where the named Plaintiffs and their counsel do not have

22  conflicts of interest with other class members, and the named Plaintiffs and their

23  counsel will vigorously prosecute the interests of the class.  *Hanlon*, 150 F.3d at

24  1020.  Here, Plaintiffs and their counsel will more than adequately represent the

25  Class.  There are no conflicts and the Class Representative have claims that are in

26  line with those of the Class.  Plaintiffs have diligently participated in the litigation

27  by communicating regularly with counsel and providing documents and

28  information about the Class claims.  Falvey Decl., ¶ 8.

Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points and Authorities in Support Thereof

1   Rule 23(g)(1) requires courts, when appointing class counsel, to consider:

2   (1) the work counsel has done in identifying or investigating potential claims in

3   the action; (2) counsel's experience in handling class actions, other complex

4   litigation and the type of claims asserted in the action; (3) counsel's knowledge of

5   the applicable law; and (4) the resources that counsel will commit to its

6   representation.  Here, Class Counsel have identified, investigated and prosecuted

7   the claims; have extensive experience in class action litigation, including wage-

8   and-hour claims of the type asserted here, and have been appointed Class Counsel

9   in numerous other cases; and have demonstrated that they have the ability and

10   resources to vigorously pursue the claims, e.g. by moving for class certification

11   and opposing a motion for partial summary judgment.  Falvey Decl., ¶¶ 1-6;

12   Boyamian Decl., ¶¶ 2-6.  For these reasons, Plaintiffs' Counsel and Plaintiffs meet

13   the adequacy requirement of Rule 23(a)(4).  Plaintiffs' Counsel should be

14   appointed as Class Counsel pursuant to Rule 23(g).

15   **3.      The Class Meets the Requirements of Rule 23(b)(3)**.

16   The Class meets the requirements of Rule 23(b)(3) because common

17   questions "predominate over any questions affecting only individual members,"

18   and class resolution is "superior to other available methods for the fair and

19   efficient adjudication of the controversy."

20   First, the Class satisfies the predominance requirement, which examines

21   whether the proposed classes are "sufficiently cohesive to warrant adjudication by

22   representation." *Hanlon,*150 F.3d at 1022.  "When common questions present a

23   significant aspect of the case and they can be resolved for all members of the class

24   in a single adjudication, there is clear justification for handling the dispute on a

25   representative rather than on an individual basis." *Id.*  Here, common issues

26   predominate because Plaintiffs' claims turn on a common liability issue suited to

27   class-wide adjudication: Whether or not Class Members were required, pursuant to

28   common policies and practices, to keep working after clocking out of their shifts,

to keep working through their meal and rest breaks, and to provide their own work equipment.  Boyamian Decl., ¶¶ 8-11.

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class-wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy."  *See Hanlon,* 150 F.3d at 1023.  The alternative to a single class action -- numerous individual actions -- would be inefficient and unfair.  *See, e.g., Custom LED, LLC v. eBay, Inc.,* (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 122022 (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").  Class actions are generally found to be superior where individual claims are relatively small, there is a large volume of individual claims, individuals lack a compelling interest in controlling their own litigation, and there would be a strain on judicial resources if individual claims were filed.  *See Wang v. Chinese Daily News, Inc.* (C.D. Cal. 2005) 231 F.R.D. 602, 614.

## VI.   CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that this Court certify the proposed class for settlement, and to grant preliminary approval of the class action settlement.

Dated: September 3, 2018           BOYAMIAN LAW, INC.
                                   LAW OFFICES OF THOMAS W. FALVEY
                                   HARTOUNIAN LAW FIRM, P.C.

                           By: /s/ Armand R. Kizirian
                               Armand R. Kizirian
                               Attorneys for Plaintiffs and the Putative Class

**Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof**