| | |
|---|---|
| 1 | BOYAMIAN LAW, INC. |
| 2 | MICHAEL H. BOYAMIAN, SBN 256107<br>michael@boyamianlaw.com |
| 3 | ARMAND R. KIZIRIAN, SBN 293992<br>armand@boyamianlaw.com |
| 4 | 550 North Brand Boulevard, Suite 1500<br>Glendale, California, 91203 |
| 5 | Telephone: (818) 547-5300<br>Facsimile: (818) 547-5678 |
| 6 | Attorneys for Plaintiffs JENNIFER PAE, ALEXANDRA SHELDON<br>Individually and on behalf of all others similarly situated |
| 7 | (*Additional Counsel for Plaintiffs Listed On Following Page*) |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PAE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>FOX RESTAURANT CONCEPTS, LLC d/b/a TRUE FOOD KITCHEN; a Arizona limited liability company; FRC TRUE FOOD SMP, LLC, a California limited liability company; FRC TRUE FOOD SDFV, LLC, a California limited liability company; FRC TRUE FOOD NBFI, LLC, a California limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No: 2:16-cv-06965-DSF-FFM<br><br>[Assigned to the Honorable Dale S. Fischer (Courtroom 7D) for all purposes]<br><br>**CLASS ACTION**<br><br>**DECLARATION OF MICHAEL H. BOYAMIAN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[FILED CONCURRENTLY WITH PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT]<br><br>Date: October 1, 2018<br>Time: 1:30 p.m.<br>Courtroom: 7D<br><br>*Action Filed*: July 22, 2016 |
| ALEXANDRA SHELDON, on behalf of herself and all other aggrieved employees and the general public,<br><br>Plaintiffs,<br>vs.<br><br>FOX RESTAURANT CONCEPTS, LLC d/b/a TRUE FOOD KITCHEN; a Arizona limited liability company; FRC TRUE FOOD SMP, LLC, a California limited liability company; FRC TRUE FOOD SDFV, LLC, a California limited liability company; FRC TRUE FOOD NBFI, LLC, a California limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | |

**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**

LAW OFFICES OF THOMAS W. FALVEY
THOMAS W. FALVEY, SBN 65744
thomaswfalvey@gmail.com
550 North Brand Boulevard, Suite 1500
Glendale, California, 91203
Telephone: (818) 547-5200
Facsimile: (818) 500-9307

HARTOUNIAN LAW FIRM
ALEX HARTOUNIAN, SBN 252210
2626 Foothill Boulevard, Suite 250
La Crescenta, California 91214
Telephone: (818) 794-9675
Facsimile: (818) 459-6997
E-mail: alex@h-lf.com

Attorneys for Plaintiffs JENNIFER PAE, ALEXANDRA SHELDON Individually and on behalf of all others similarly situated

**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**

# DECLARATION OF MICHAEL H. BOYAMIAN

I, Michael H. Boyamian, declare as follows:

1. I am an attorney licensed to practice in all the courts of the state of California and am a partner at Boyamian Law, Inc., counsel of record for Plaintiffs Jennifer Pae and Alexandra Sheldon ("Plaintiffs") and proposed Class Counsel in this action. I make this Declaration in and support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. All of the information set forth herein is based on my personal and firsthand knowledge and if called and sworn as a witness, I could and would competently testify thereto.

## Legal Background and Experience in Class Action Lawsuits

2. I am a 2007 graduate of Whittier Law School. While in Law School, I served as the President of the Armenian Law Students Society and was a member of the Moot Court Honors Board. I was admitted to the California State Bar and to the Supreme Court of the State of California in June of 2008. I am a member of various professional organizations, including the California Employment Lawyers Association (CELA), the Consumer Attorneys Association of Los Angeles (CAALA), and the Armenian Bar Association. I have been named as a Southern California Super Lawyer - Rising Star from 2015 through 2018 by Los Angeles Magazine.

3. I was recruited to the Law Offices of Thomas W. Falvey by Mr. Thomas W. Falvey in December of 2012. I joined the firm in January of 2013 and continued to work as an attorney there until June of 2018. Prior to the Law Offices of Thomas W. Falvey, I worked at (now defunct) Khorrami Pollard Abir, LLP (later known as Khorrami, LLP or Khorrami Boucher Sumner Sanguinetti, LLP) (collectively referred to as "Khorrami") from June 2011 to December 2012. At Khorrami, my areas of practice involved individual civil rights actions; class actions focusing on wage and hour claims and consumer rights and protection; mass actions dealing with pharmaceutical drugs and defective medical devices;

individual wage and hour actions and actions brought under the Fair Employment Housing Act.  Prior to Khorrami, I worked at The Gillam Law Firm in Century City, California from about January 2007 to June 2011.  My focus at The Gillam Law Firm was primarily centered on individual employment actions involving wrongful termination, retaliation, discrimination, and wage and hour claims.  At The Gillam Law Firm and in 2009, I was also first exposed to class actions.  In particular, The Gillam Law Firm and the Law Offices of Thomas W. Falvey co-counseled on a class action case involving an international transportation company which resulted in a substantial recovery to thousands of school bus drivers in California.  That case was *McKinlay v. Durham School Services*, Los Angeles Superior Court, Case No.  BC425600.  The successful prosecution of the McKinlay action introduced Your Declarant to Mr. Falvey.  After five and a half years with the Law Offices of Thomas W. Falvey, I decided to form my own Labor and Employment practice at Boyamian Law, Inc. Overall, I have been in continuous practice for over ten years, and since then, I have exclusively represented plaintiffs in labor and employment matters.

      4.     Since my tenure at the Law Offices of Thomas W. Falvey and continuing to this day, I have served an integral part in prosecuting class action cases and recovering outstanding wages and compensation for thousands of workers and consumers in California.   In particular, those cases - have included, but not limited to, the following recent recoveries:

- *Mendez v. R+L Carries, Inc.*, Case No. C 11-2478 CW (N.D. Cal., 2013), wage and hour class action involving California truck drivers, which settled for $9,500,000.
- *Meneses v. CVS Pharmacy, Inc., et al..*, Case No. BC 489739 (2014), filed in Los Angeles County on behalf of pharmacists, which settled for $2,800,000.

2
**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**

- *Stovall-Gusman v. W.W. Grainger, Inc.*, Case No. 13-cv-02540-HSG (N.D. Cal. 2015), which settled for $715,000.
- *Leos v. FedEx*, Case No. 14-02864-ODW-AGR (C.D. Cal. 2015), a class action for unpaid wages pursuant to the Living Wage Ordinance, recently settled for $385,000.
- *Cortes v Daley Foods*, Case No. BC 496955 and Gutierrez v. Daley Foods, Case No. BC524915 (Los Angeles County Superior Court, 2015), wage and hour class action involving California Labor Code violations relating to restaurant workers, settled for $2.2 million.
- *Fuentes, et al. v. Macy's West Stores, Inc.*, Case No. CV 14-00790-ODW (FFMx) (C.D. Cal 2015) wage and hour class action involving misclassification of independent contractors, which settled for $4 million.
- *Timothy J. Connell, et al, Klara Paksy, et* al and Dale Bystrom, et al v. CVS Pharmacy, Inc., et al., LASC Case Nos. BC523172, BC523491, BC525991 (2016) wage and hour class action involving Labor Code overtime violations on behalf of pharmacists ($7,461,600 settlement).
- *Rimanpreet Uppal v. CVS Pharmacy, Inc., et al.*, Case No. 3:14-cv-02629-VC (N.D. Cal. 2016) wage and hour class action involving Labor Code overtime violations on behalf of pharmacists ($2,350,800 settlement).
- *Phillips v. AccentCare, Inc., et al.*, Case No. CIVDS1620673 (2017) wage and hour class action involving Labor Code overtime violation on behalf of home health nurses and other home health professionals ($1,500,000.00).
- *Hooper v. URS Midwest, Inc.*, Case No. CIVDS1607489 (2017) wage and hour class action involving Labor Code overtime violation on

3

**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**

|   |   |
|---|---|
| 1 | behalf of Car Haulers ($2,900,000). |
| 2 | 5.　In addition, I have also been certified as class counsel following two |
| 3 | contested class certification motions: *Tyrer v. First Student, Inc.*, L.A.S.C Case |
| 4 | No.: BC459305 (June 2014), *Chavez v. Teavana Corporation*, L.A.S.C. Case No.: |
| 5 | BC475921 (May 2014). |
| 6 | 6.　Your Declarant played an integral role in the prosecution of this |
| 7 | matter. Your Declarant was involved throughout the discovery process, reviewed |
| 8 | the data from Defendants through the discovery process and also provided to us by |
| 9 | the Class Representatives. It is from these documents that Plaintiffs calculated |
| 10 | what they and putative class members are presently owed by Defendants. Your |
| 11 | Declarant also took the deposition of Defendants' Designated Person Most |
| 12 | Knowledgeable under FRCP 30(b)(6), the deposition of Plaintiff's former General |
| 13 | Manager, and interacted with numerous putative class members to prepare |
| 14 | declarations in conjunction with Plaintiffs' filed Motion for Class Certification. |
| 15 | Critically, the outreach efforts with the putative class secured corroboration and |
| 16 | support for the underlying class claims. |
| 17 | 7.　The class action was filed on July 22, 2016 against the named |
| 18 | Defendants. At the time of filing, the operative complaint sought to represent all |
| 19 | non-exempt, hourly employees at the three restaurants that were in place at the |
| 20 | time of Plaintiff Jennifer Pae's employment. Subsequently, on April 26, 2017, |
| 21 | Plaintiff Alexandra Sheldon filed her complaint in Los Angeles Superior Court |
| 22 | against Defendants alleging a singular cause of action for violations and penalties |
| 23 | under the California Labor Code. During the course of litigation, Your Declarant, |
| 24 | along with Plaintiffs' Counsel, determined that a class action cases against all non- |
| 25 | exempt employees would not be feasible given the variance in the job duties |
| 26 | performed by putative class members which Plaintiffs alleged triggered the Labor |
| 27 | Code violation. As a result, the action was then limited to just those non-exempt, |
| 28 | hourly employees who, liked Plaintiffs, worked the "front of the house". |

8. Plaintiffs' allege that Defendants violated California's wage and hour laws in three principle ways. First, Plaintiffs allege that they were not properly provided with meal and rest breaks by Defendants. The True Food Kitchen restaurants were often understaffed and management would require the "front of the house" employees to work through their meal and rest breaks. Similarly, Plaintiffs and Class Members were also required to work after clocking out of their shifts. While Plaintiffs and Class Members would generally cease performing their core job duties when clocking out, they were nevertheless required to do various side tasks, or "side work" by management. For example, servers would stop waiting tables once they had clocked out, but would still be required to help clean the restaurant and roll silverware before leaving the workplace.

9. Encouraging this practice of working through meal and rest breaks and continuing to work after having clocked out was the fact that True Food Kitchen set a strict labor budget. Part of the local General Manager's compensation was based on the restaurant's ability to stay within its assigned budget. As a result, local management at True Food Kitchen was also incentivized to cause or ignore wage and hour violations as to do otherwise would impact the General Manager's own pay.

10. Finally, True Food Kitchen would not reimburse Plaintiffs and Class Members for their replacement aprons, True Food Kitchen t-shirts, and non-stick shoes that they were required to wear to work. Plaintiffs and Class Members also had to purchase an app called HotSchedules in order to access their schedules, but this expense was also not paid for by Defendants.

11. In addition to the above primary claims, Plaintiffs' suit involved derivative claims for inaccurate wage statements and waiting time penalties. It is worth noting that Plaintiffs and Class Members would not recover anything on these derivative claims if Plaintiffs were unsuccessful in pursuing the underlying

**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**

wage and hour violations.

12. Hundreds - if not thousands - of documentary evidence was reviewed by Your Declarant to prepare for the case and to conduct a successful examination of Defendants' witnesses. As stated above, Your Declaration also corresponded with numerous putative class members. The experiences of putative class members shared with Your Declarant and other members of the firm certainly gave the framework for Plaintiffs to proceed with their lawsuit. Furthermore, Plaintiffs' case also greatly benefitted from the production of time punch data which exhibited meal break violations occurring during the relevant class period.

13. On April 4, 2018, the Parties attended a full-day mediation with experienced mediator, Steven J. Serratore. The Parties engaged in protracted negotiations and were ultimately able to reach an agreement that was based fundamentally upon the mediator's advice and guidance. While a settlement figure was agreed upon by the Parties in the days after the mediation, negotiations as to the specific terms of the agreement continued for several weeks thereafter. The settlement was the result of arm's-length negotiations by experienced counsel familiar with the applicable law, the facts of this case, and class action litigation. At the time of the mediation, the Parties had already prepared and briefed Plaintiffs' Motion for Class Certification and Defendants' Motion for Partial Summary Judgment. As a result, Plaintiffs' Counsel, and indeed Defense Counsel, understood very well the strengths and weaknesses of their respective position.

14. While the case has many strengths in favor of Plaintiffs, Your Declarant would be remiss if he did not recognize the challenges in winning class certification and liability. While Plaintiffs maintain that putative class members were deprived of their statutory breaks on shifts, case law is clear that an employer's only affirmative obligation is to notify its employees of California's meal and rest break rules. For instance, Your Declarant came to learn that some Class Members knowingly skipped breaks and willingly worked off the clock to

maximize on their ability to collect tips.  Moreover, aside from liability Plaintiffs would have to show sufficient commonality among the "front of the house" employees to maintain this suit as a Class Action.  Your Declarant is cognizant of the fact that while numerous Class Members supported Plaintiffs' allegations through declarations, no direct documentary evidence exists of a sufficiently high placed manager within the True Food Kitchen organization instructing Class Members to work off the clock or through meal and rest breaks.  All of this was taken into account by Your Declarant and Plaintiffs' Counsel in considering whether to settle this matter based on the amount being offered by Defendants.

15. Your Declarant also appreciated the variance of experiences shared by Class Members. Your Declarant learned that Class Members chose not to work off-the-clock, were uninterested in cooperating with Your Declarant and his team, have a vague recollection of being told to work off-the-clock by a former, rogue manager, or never worked off-the-clock and got paid for working overtime.  Your Declarant is of the opinion that these distinctions provide Defendants additional arguments to bolster their claim that individual issues predominate or that there was no uniform *de facto* policy of failing to compensate Class Members for all hours worked.

16. Accordingly, Plaintiffs were cognizant of the potential argument that whether a class member's schedule permitted a break depended on facts unique to each employee and each particular restaurant.  As to the merits, post-*Brinker* decisions have found that employers' liability springs not simply from a defective policy or scheduling, but from proof that breaks were unlawfully denied.

17. I support the analysis provided in the concurrently filed Plaintiffs' Motion for Preliminary Approval, recounting the background and events of this action, the contribution of Plaintiffs, the investigation and discovery completed by parties, and Plaintiffs' counsel's calculation of the maximum potential liability and damages in this action.  Specifically, Your Declarant agrees that, over the six year Class Period of this suit, there likely have been approximately 275 "front of the

house" employees working at True Food Kitchen restaurants in California on any given day.  This figure would have been much lower at the start of the Class Period, when True Food Kitchen only had a few locations in the state, and would be quite a bit higher now as they have been expanding during the last few years. In addition, the expert statistician that Plaintiffs' engaged in preparing for the Motion for Class Certification found meal break violations on 9.1% of all shifts. Like my colleague, I believe this number is much lower than the true violation rate as Plaintiffs and Class Members often stated that managers would alter time clock entries to mask meal break violations.  I also agree that the average wage for "front of the house" employees over the six year Class Period would be approximately $10 per hour.  Class Members were generally paid minimum wage - while the minimum wage has been higher than this for the last year and half, when combined with the other four and a half years of the Class Period, the average wage is likely to be approximately $10 per hour.

18.   The conclusion to be drawn from co-counsel's analysis is that neither liability, nor damages was clear-cut - which is why the parties elected to settle this matter. As shown, some of Plaintiffs' claims are largely of indeterminate value. Plaintiffs' counsel had to apply appropriate discounts because of these indeterminables even independent of the discounts necessitated by settling pre-certification because they posed a real risk to recovery. Thus, this Settlement, like most others, was the product of compromise. Nevertheless, the settlement amount is fair and reasonable in light of the strengths and weaknesses of the case, and in the best interests of Settlement Class Members.

I declare, under penalty of perjury of the laws of California and the United States, the foregoing to be true and correct.  Executed this 31st day of August, 2018 in Glendale, California.

/s/Michael H. Boyamian

Michael H. Boyamian

**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**


# **ATTESTATION**

I hereby attest that the concurrence in the filing of this document has been obtained from Michael H. Boyamian of Boyamian Law, Inc., Attorneys for Plaintiffs.

DATED: September 3, 2018  BOYAMIAN LAW, INC.
LAW OFFICES OF THOMAS W. FALVEY
HARTOUNIAN LAW FIRM


By: /s/ Armand R. Kizirian
ARMAND R. KIZIRIAN
Attorneys for Plaintiffs, individually, and on behalf of all others similarly situated

**Declaration of Michael H. Boyamian ISO Plaintiffs' Motion for Preliminary Approval**