BOYAMIAN LAW, INC.
MICHAEL H. BOYAMIAN (SBN 256107)
ARMAND R. KIZIRIAN (SBN 293992)
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5300 | Fax: (818) 547-5678
E-mail: michael@boyamianlaw.com,
armand@boyamianlaw.com

LAW OFFICES OF THOMAS W. FALVEY
THOMAS W. FALVEY (SBN 65744)
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5200 | Fax: (818) 500-9307
E-mail: thomaswfalvey@gmail.com

HARTOUNIAN LAW FIRM
ALEX HARTOUNIAN, SBN 252210
418 N. Fair Oaks Ave., Suite 202
Pasadena, California 91103
Telephone: (818) 794-9675
Facsimile: (818) 459-6997
E-mail: alex@h-lf.com

Attorneys for Plaintiffs JENNIFER PAE, ALEXANDRA SHELDON, individually and on behalf of all others similarly situated.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PAE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FOX RESTAURANT CONCEPTS, LLC d/b/a TRUE FOOD KITCHEN; a Arizona limited liability company; FRC TRUE FOOD SMP, LLC, a California limited liability company; FRC TRUE FOOD SDFV, LLC, a California limited liability company; FRC TRUE FOOD NBFI, LLC, a California limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants | CASE NO.  2:16-cv-06965-DSF-FFM<br><br>[Assigned to the Hon. Dale S. Fischer, Courtroom 7D]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards; Supporting Declarations; and [Proposed] Order]<br><br>Hearing Date:  March 25, 2019<br>Time:  1:30 p.m.<br>Courtroom:  7D (1st Street Courthouse)<br><br>Complaint Filed: July 22, 2016<br>Removal Date: September 16, 2016 |

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take Notice that on March 25, 2019 at 1:30 p.m., or as soon thereafter as the matter can be heard in Courtroom 7D of the United States District Courthouse located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Dale S. Fischer, Plaintiffs Jennifer Pae and Alexandra Sheldon ("Plaintiffs") will and hereby does move this Court for an Order Granting Final Approval of Class Action Settlement.

Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declaration of Michael H. Boyamian and the respective exhibits; the Declaration of Thomas W. Falvey and the respective exhibits; the Declaration of Alex Hartounian and the respective exhibits; the Declaration of Armand R. Kizirian and the respective exhibits; the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

Plaintiffs respectfully request that the Court: (1) grant final approval of the proposed Settlement; (2) certify the Class for settlement purposes; (3) find that the Notice was the best practicable notice under the circumstances and satisfied all Constitutional and other requirements; (4) confirm Settlement Class Members who have submitted timely requests for exclusion; (5) confirm as final the Court's preliminary appointment of settlement Class Counsel; (6) confirm as final the Court's preliminary appointment of Jennifer Pae and Alexandra Sheldon as class representatives; (7) grant service enhancement awards to class representative Jennifer Pae in the amount of $15,000.00 and class representative Alexandra Sheldon in the amount of $10,000.00; (8) grant an award of attorneys' fees of $221,306.53 (25 percent of the total settlement sum after employer's share of payroll taxes are deducted), and litigation costs of $21,417.38, for a total fee and expense award of $242,723.91; (9) award the settlement administrator, CPT Group, $23,500.00 for claims administration expenses; (10) dismiss the action pursuant to the terms and conditions of the Settlement Agreement; (11) retain jurisdiction over the

1  enforcement and implementation of the Settlement Agreement; and (12) issue related
2  orders as necessary.
3
4  Dated: February 19, 2019             Respectfully submitted,
                                        BOYAMIAN LAW, INC.
5                                       LAW OFFICES OF THOMAS W. FALVEY
6                                       HARTOUNIAN LAW FIRM
7
                                        By:   /s/ Armand R. Kizirian
8                                             Armand R. Kizirian
9                                             Attorneys for Plaintiffs Jennifer Pae,
                                              Alexandra Sheldon, and the Settlement
10                                            Class
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................1

II. CASE SUMMARY .........................................................................................2

III. SUMMARY OF THE TERMS OF THE SETTLEMENT ................................2

    A. The Notice Process Encompassed Comprehensive Efforts to Reach Every Class Member and Ensure Maximum Opportunity for Class Members to Benefit and Recover Fair Allocations. ..................................6

    B. For Any Unclaimed Funds, Bet Tzedek Is an Appropriate Cy Pres Beneficiary. ..................................................................................................7

IV. FINAL APPROVAL IS WARRANTED FOR A FAIR, ADEQUATE, AND REASONABLE SETTLEMENT SUCH AS THIS. ...........................................7

    A. An Assessment of the Claims and Defenses Asserted, and Other Relevant Factors, Weigh Strongly in Favor of Approving the Settlement. ..................................................................................................9

    B. The Investigation Completed Weighs in Favor of Approving the Settlement. ................................................................................................11

    C. Plaintiffs' and Defendants' Counsel Are Experienced, and the Settlement Is the Product of Serious, Informed, Non-Collusive and Good-Faith Negotiations. ..........................................................................12

    D. The Class's Positive Response to the Settlement, to Which There Have Been No Objections and Minimal Opt-Outs, Strongly Supports Final Approval. ..........................................................................................13

    E. The Requested Attorneys' Fees, Costs and Services Awards Are Reasonable and Comparable to Those Routinely Awarded. ....................14

V. CONCLUSION............................................................................................15

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Cody v. Hillard*,
    88 F. Supp. 2d 1049 (D.S.D. 2000) .................................................................. 13

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) .............................................................................. 7

*Ellis v. Naval Air Rework Facility*
    (N.D. Cal. 1980) 87 F.R.D. 15 aff'd 661 F.2d 939 (9th Cir. 1980) ................... 12

*Fisher Bros. v. Cambridge Lee Indus., Inc.*
    (E.D. Pa 1985) 630 F. Supp. 482 ...................................................................... 12

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ............................................................................ 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................ 8

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............................................................. 13

*In re Art Materials Antitrust Litig.*,
    100 F.R.D. 367 (N.D. Ohio 1983) .................................................................... 14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) .................................................................... 13

*Mandujano v. Basic Vegetable Prods., Inc.*,
    541 F.2d 832 (9th Cir. 1976) ............................................................................ 13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F. 2d 615 (9th Cir. 1982) ............................................................................ 7

*Satchell v. Fed. Exp. Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................................. 13

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 8

## I. INTRODUCTION

Plaintiffs Jennifer Pae and Alexandra Sheldon ("Plaintiffs") seek final approval of this Class Action Settlement, in which Defendants Fox Restaurant Concepts, LLC, FRC True Food SMP, LLC, FRC True Food SDFV, LLC, and FRC True Food NBFI, LLC ("Defendants" or "True Food Kitchen") (Plaintiffs and Defendants together as the "Parties") have agreed to pay $900,000, on a non-reversionary basis, to settle claims of 2,580 individuals who were employed as non-exempt front-of-the-house employees in California at all of Defendants' True Food Kitchen restaurants at any time from July 22, 2012 to December 4, 2018 ("Settlement Class Members"). The proposed settlement will provide an average gross recovery of approximately $221.18 per class member, with the highest estimated gross award at $1,515.81. The notice package was mailed on January 11, 2019. Declaration of Bryan Valdez On Behalf of CPT Group, Inc. with Respect to Notification and Settlement Administration ("Valdez Decl."), ¶ 6. While the notice package was just mailed, Plaintiffs do not anticipate any objections or a significant number of opt-outs, and indeed, as of January 24, 2019, only one individual had opted out. Valdez Decl., ¶ 10. Plaintiffs will file a supplemental declaration from the third-party administrator closer to the final approval hearing date so that the Court is informed of the total number of opt-outs and/or objections that are filed.

The Settlement, which was reached as a result of arm's-length negotiations with the assistance of respected mediator Steven J. Serratore, Esq., is eminently fair and reasonable and should be approved. By this unopposed motion, Plaintiffs request final approval of the proposed Settlement, which was preliminarily approved by this Court on December 4, 2018, including a final determination that the Settlement is in good faith and fair to the settlement class.

In the concurrently filed Motion for Final Approval of Attorneys' Fees, Costs, and Enhancement Awards ("Motion for Attorneys' Fees"), Plaintiffs also seek, among other things, an award of attorneys' fees in the amount of $221,306.53 (1/4 of the gross settlement after the employer's share of payroll taxes are deducted); litigation costs of

$21,417.38, claims administration costs of $23,500; and enhancement awards for the named Plaintiffs Class Representatives of $15,000 for Jennifer Pae and $10,000 for Alexandra Sheldon. After deducting the requested fees and costs, the Net Settlement amount to be distributed to Class Members, inclusive of payroll taxes, is estimated at $570,419.60. Valdez Decl., ¶ 13.

Class Counsel have achieved an excellent result in this litigation, embodied in the Settlement Agreement. Final approval is warranted because this is a fair and positive result for the Class Members who worked for Defendants at their True Food Kitchen restaurants, as evidenced by their extremely positive response to the settlement. As of January 24, 2019, no Class Member objected to the settlement and only one has opted out, signifying overwhelming approval by Class Members. Valdez Decl., ¶ 10. All of the Court's requirements for Notice to the Class, set forth pursuant to the Order Granting Preliminary Approval, have been fully complied with. The conclusion that the Settlement is a truly excellent result becomes more apparent in light of Defendants' defenses to Plaintiffs' claims, as described in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Indeed, the Settlement strikes a balance between the perils of continued litigation and fairly compensating Class Members. The Settlement is fair and reasonable, and should be approved.

## II. CASE SUMMARY

This class action suit was brought by Plaintiffs Jennifer Pae and Alexandra Sheldon, as they sought to represent current and former front-of-the-house employees at Defendants' California True Food Kitchen restaurants. Plaintiffs allege a variety of wage and hour violations on the part of Defendants.

First, Plaintiffs allege that they were not properly provided with meal and rest breaks by Defendants. Plaintiffs and Class Members were required to complete meal break waiver forms, and were thereafter generally scheduled for six-hour shifts. If Plaintiffs and Class Members worked no more than six hours, they would have been entitled to one rest break. However, Defendants seldom, if ever, provided for a duty-free

rest break. Defendants would try and schedule as few front-of-the-house staff as possible for any given shift. However, because scheduling for a shift necessarily occurs before the shift itself, Defendants often would end up under-staffing shifts with front-of-the-house employees, such as servers. Declaration of Michael H. Boyamian in Support of Final Approval ("Boyamian Decl."), ¶ 8; Declaration of Jennifer Pae in Support of Final Approval ("Pae Decl."), ¶¶ 4-6; Declaration of Alexandra Sheldon in Support of Final Approval ("Sheldon Decl."), ¶¶ 7-11.

When a shift was understaffed, Plaintiffs and Class Members would be expected to work through their rest break. Even though it was never written explicitly by Defendants in any employee manual, Plaintiffs and Class Members understood perfectly well that it would be wholly inappropriate to, e.g., spend 10 minutes outside on a break when customers were having their dishes go cold because there were not enough servers to cover all tables. Pae Decl., ¶ 6; Sheldon Decl., ¶ 6.

Certain shifts also were scheduled for 8 hours. On such shifts, Plaintiffs and Class Members would be required to take a 30-minute unpaid meal break. However, just as with rest breaks, management would expect Plaintiffs and Class Members to assist during their unpaid meal breaks, particularly if the restaurant was busy during that shift. Pae Decl., ¶¶ 4-5; Sheldon Decl., ¶¶ 5, 7.

On shifts that went beyond their scheduled time of 6 or 8 hours, Plaintiffs and Class Members would regularly be required to work off-the-clock. In the case of the six-hour shift, Plaintiffs and Class Members would still have to keep working off-the-clock because otherwise, their meal break waiver would no longer be effective at that point and they simply could not keep working without incurring a meal break violation. Similarly, Plaintiffs and Class Members could not keep working after eight hours because to do so would require that employee to incur overtime hours - something that Defendants very much wanted to avoid. Pae Decl., ¶¶ 4-6; Sheldon Decl., ¶¶ 5, 7, 10-11.

///

///

3

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

Particularly at the end of their shifts after they had already clocked out, Plaintiffs and Class Members would be required to complete side work such as rolling silverware (wrapping napkins around cutlery), sweeping the dining room floor, restocking the service area or wiping down work counters, stocking and cleaning the cupboard, restocking condiments, restocking plates, and cleaning up.  Pae Decl., ¶¶ 3-4; Sheldon Decl., ¶¶ 5, 10.

Moreover, each True Food Kitchen restaurant was headed by a General Manager. Part of the General Manager's compensation was tied to the profitability of the restaurant. One metric measured by True Food Kitchen and that factored into the profitability of the restaurant was adherence to the labor budget.  As a result, if a General Manager chose to schedule more staff members on each shift to ameliorate the above under-staffing issues, he or she risked exceeding the labor budget, impacting profitability, and thus ultimately hurting his or her own pay.  For this reason, among others, Defendants' local management was not particularly concerned if True Food Kitchen was not complying very well with California's wage and hour laws.  Boyamian Decl., ¶ 9.

Finally, True Food Kitchen would not reimburse Plaintiffs and Class Members for their replacement aprons, True Food Kitchen t-shirts, and non-stick shoes that they would have to wear.  Further, Plaintiffs and Class Members had to purchase an app called HotSchedules in order to access their schedules, but this expense was also not paid for by Defendants.  Boyamian Decl., ¶ 10; Sheldon Decl., ¶ 10.

**III.   SUMMARY OF THE TERMS OF THE SETTLEMENT**

The basic terms of the proposed settlement are as follows:

1.   Defendants will pay a gross amount of $900,000 with no reversion. Settlement Agreement at ¶ 16.  The Joint Stipulation of Settlement and Release Between Plaintiffs and Defendants is attached as Exhibit "1" to the Declaration of Armand R. Kizirian in Support of Final Approval ("Kizirian Decl.").

///

///

4

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

2. Plaintiffs seeks attorneys' fees in the amount of $221,306.53 (25% of the gross settlement after $14,773.87 in employer-side payroll taxes are deducted) as well as reimbursement of their costs and expenses of $21,417.38, which will not be opposed by Defendants. Settlement Agreement at ¶ 19; Kizirian Decl. ¶ 9.

3. The Settlement Administration costs through completion in the amount of $23,500. Settlement Agreement at ¶ 16; Valdez Decl., ¶ 12.

4. Plaintiffs seek service awards in the amount of $15,000 for Jennifer Pae and $10,000 for Alexandra Sheldon for their role as Class Representatives, which will not be opposed by Defendants. Settlement Agreement at ¶ 112.

5. The Release given by Settlement Class Members to participate in this settlement does *not* include a California Civil Code § 1542 waiver of claims. The Class Representative Plaintiffs, however, provide Defendants with a waiver of claims pursuant to California Civil Code § 1542. Settlement Agreement, ¶¶ 24-25.

6. Notice packages were mailed to all Settlement Class Members via first class mail on January 11, 2019. The deadline for Settlement Class Members to object or opt-out, if they do not want to participate, is February 25, 2019. Valdez Decl. at ¶ 6. An exemplar of the Notice of Class Action Settlement which was mailed to Settlement Class Members on January 11, 2019 is attached as Exhibit A to the Declaration of Bryan Valdez from CPT Group, Inc., the Settlement Administrator.

7. The settlement payments will be allocated as 20% for unpaid wages and 80% for unpaid interest penalties. The Settlement Administrator will issue Form 1099-MISC to all participating Settlement Class Members. Settlement Agreement at ¶ 17(g).

8. Settlement checks will be valid and negotiable for 180 days. If any uncashed checks remain after 60 days, they will be voided, and the remaining funds disbursed to Bet Tzedek. Settlement Agreement at ¶¶ 18, 22; Valdez Decl, ¶ 2, Ex. A (Notice at p. 3 (Part B re: "What will I receive from the Settlement?")).

///

///

5

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### A. The Notice Process Encompassed Comprehensive Efforts to Reach Every Class Member and Ensure Maximum Opportunity for Class Members to Benefit and Recover Fair Allocations.

This Court approved the Notice Packet, which included the Notice of Class Action Settlement and optional Allocation Form. The Notice Packet was mailed by the Settlement Administrator to the last known address of all Settlement Class Members via First Class Mail on January 11, 2019. Valdez Decl., ¶ 6. The final deadline to submit the voluntary Allocation Forms, objections, or exclusions is February 25, 2019. Valdez Decl., ¶ 6. Class Counsel will also submit a supplemental report regarding any opt-outs or objections received after the end of the notice period, i.e. February 25, 2019, but before the final approval hearing presently set for March 25, 2019. As of January 24, 2019, there has been only one opt-out and zero objections to this class action settlement. Valdez Decl., ¶ 10.

Before sending out the Notices to the Settlement Class Members, CPT Group, Inc. ran the names and addresses it was provided from Defendants through the U.S. Postal System's National Change of Address Database ("NCOA") to ensure that as many Settlement Class Members as possible received the notice documents. Valdez Decl., ¶ 5. In addition, CPT Group, Inc. established a toll-free telephone number that Settlement Class Members could call with any questions they may have about the settlement. Valdez Decl., ¶ 6, Ex. A.

This manner of notice and outreach was reasonably calculated to provide notice to Settlement Class Members and complies with the requirements of the Court's Order Granting Preliminary Approval. The cost of the notice shall be part of the Settlement Administration costs, which are fixed at $23,500 through completion, which shall be deducted from the Gross Settlement Amount.

///
///
///
///

### B. For Any Unclaimed Funds, Bet Tzedek Is an Appropriate Cy Pres Beneficiary.

As discussed above, settlement checks will be valid and negotiable for 60 days. Settlement Agreement at ¶ 22. Any unclaimed funds will be disbursed to the Employment Law Center. Settlement Agreement at ¶ 18; Valdez Decl, ¶ 2, Ex. A (Notice at p. 3 (Part B re: "What will I receive from the Settlement?")). Bet Tzedek is an appropriate *cy pres* beneficiary with a "driving nexus" to the interests of the class both geographically and in its purpose. This is a case seeking redress under the California Labor Code for individuals whom Plaintiffs contend were not properly paid all the wages they were due. Bet Tzedek is an organization appropriately aligned with the interests of the class as the organization, through its Economic Justice program, "…provides workers direct representation in individual and class action cases, helps thousands of workers know their rights, assists trafficked laborers who were illegally denied earned wages…". Kizirian Decl., ¶ 8; *see Dennis v. Kellogg Co.*, 697 F.3d 858, 865-67 (9th Cir. 2012).

### IV. FINAL APPROVAL IS WARRANTED FOR A FAIR, ADEQUATE, AND REASONABLE SETTLEMENT SUCH AS THIS.

Federal law strongly encourages settlements in the context of class actions. *See, e.g., Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

To approve a proposed settlement of a class action under Federal Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

component parts, that must be examined for overall fairness." *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, *i.e.*, whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement.  *See id.* (noting that the relative importance of each of these factors will depend on the circumstances of the case). Here, all of the relevant factors weigh in favor of final approval.

The total settlement amount is $900,000, which includes payment to Settlement Class Members, the named Plaintiffs' service awards, the costs of administration of the settlement, and attorneys' fees and costs.  As discussed more fully below, these amounts are eminently fair and reasonable under all of the relevant circumstances.

Should the Court not approve the Settlement, Plaintiffs' Motion for Class Certification and Defendants' Motion for Partial Summary Judgment, which are fully briefed, would be at issue for the Court's determination.  Despite Plaintiffs' confidence in their claims and the appropriateness of class certification, Plaintiffs nevertheless recognize the very real risk that the Court may deny class certification or grant summary judgment as to some claims.  In addition, attorneys' fees and litigation costs would increase significantly if Plaintiffs were to litigate this action with a certified class and hold a class action trial.  Moreover, Defendants would likely appeal any adverse verdicts at trial.  For these reasons, as well as the reasons stated below, the Settlement is a fair and reasonable outcome for the Settlement Class members.

///

///

### A. An Assessment of the Claims and Defenses Asserted, and Other Relevant Factors, Weigh Strongly in Favor of Approving the Settlement.

The settlement considers the strengths and weaknesses of both parties' respective positions. Plaintiffs allege that Defendants failed to properly compensate Class Members for all hours worked at the True Food Kitchen restaurants. Plaintiffs also allege that Defendants did not provide meal and rest breaks in conformity with California law due to chronic understaffing, and failed to reimburse all business expenses. Further litigation carries numerous risks and obstacles for Plaintiffs and Class Members. Boyamian Decl., ¶¶ 14-15.

First, Plaintiffs may not be able to certify a class of front-of-the-house employees under Rule 23(b). Rule 23(b) provides that class certification is appropriate where "...the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and...a class action is superior to other available methods...". Fed. R. Civ. P. 23(b)(3).

Plaintiffs can show through common evidence that Defendants typically scheduled Class Members for six hour shifts in line with their meal break waiver forms. Moreover, Plaintiffs can show that they and Class Members were clocking out from work at or near the sixth or even the eight-hour mark but continuing to work off-the-clock by either continuing to wait on tables or completing the required "side work" and then "cashing out." Plaintiffs submitted substantial evidence in this regard with their Motion for Class Certification. Boyamian Decl., ¶ 8.

However, in opposing Plaintiffs' Motion for Class Certification, Defendants submitted their own evidence which allegedly showed that Plaintiffs and Class Members were not working off the clock, or that the experiences of the front-of-the-house employees varied. If the Parties had not reached this settlement and the Court found Defendants' evidence to be credible, no class would be certified for off the clock work. Declaration of Alex Hartounian in Support of Final Approval ("Hartounian Decl."), ¶ 23.

///
///

Similarly, Plaintiffs submitted evidence with their Motion for Class Certification that they and Class Members were also unable to take their rest breaks and meal breaks (when ostensibly provided) due to the amount of work that they were responsible for completing, the chronic understaffing at True Food Kitchen restaurants, and local management's financial incentive to keep their restaurants understaffed. Boyamian Decl., ¶¶ 8-9. On all these points, Defendants cited contrary evidence. When Plaintiffs pointed to a policy of Defendants that supported their claims, Defendants would cite another. When Plaintiffs proffered various declarations of Class Members that were in accord with Plaintiffs' statements, Defendants submitted their own employee declarations.

As a result, while Plaintiffs are confident in their claims, it cannot be said that Defendants' presented no contrary evidence to the Court. Thus, in the absence of settlement, the Court's ruling on the pending Motion for Class Certification and Defendants' Motion for Partial Summary Judgment will come down to a credibility determination by the Court. Consequently, through the compromise of this settlement, the Parties are each assured of certainty with the outcome, and avoid, from Plaintiffs' and the Class's perspective, potentially losing all or some of their claims, and from Defendants' perspective, of this becoming a much more advanced suit. Hartounian Decl., ¶ 23.

In addition, with regard to Plaintiffs' claims for wage statement and waiting time penalties, both claims are derivative of Plaintiffs' primary off-the-clock and meal and rest break allegations. Thus, Plaintiffs would recover nothing for themselves, or the Class, if the underlying claims are unsuccessful. Boyamian Decl., ¶ 11.

Finally, with regard to waiting time penalties, Defendants might argue that there was a good faith dispute regarding whether Class Members were owed any wages at the time their employment ended. *See* Cal. Code Regs. Tit. 8, § 13520 (good faith dispute, based in law or fact, precludes award of waiting time penalties). Defendants might also contend that to the extent that they failed to pay any wages to Class Members, their failure was not willful within the meaning of California Labor Code § 203. *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008). In regards to wage statements,

Defendants might argue that the statute provides for penalties only if Plaintiffs prove that Defendants' violations were both knowing and intentional. Cal. Lab. Code § 226(e). Therefore, even assuming *arguendo* that Plaintiffs can establish a failure to pay wages, Plaintiffs may be unable to demonstrate that Defendants' failure to include overtime on their earnings statement was both knowing and intentional. Without this proof, Plaintiffs cannot recover penalties or fees under Section 226(e).

### B. The Investigation Completed Weighs in Favor of Approving the Settlement.

Class Counsel conducted a thorough investigation into the relevant facts and legal claims before entering into this settlement with Defendants. Class Counsel closely reviewed the data provided by Defendants through the discovery process to assess liability and determine the amount of damages potentially available to putative class members. Boyamian Decl., ¶¶ 12-13, 17. Moreover, Plaintiffs themselves provided Class Counsel with detailed and comprehensive information in order to assist counsel in assessing the strengths and weaknesses of the claims at issue. Boyamian Decl., ¶ 20; Pae Decl. ¶¶ 10-12; Sheldon Decl., ¶¶ 2, 14-16. Class Counsel also contacted and extensively interviewed putative class members so as to have as much information as possible about the working conditions at True Food Kitchen. Boyamian Decl., ¶¶ 12, 24; Hartounian Decl., ¶ 19. Finally, Class Counsel utilized the services of an expert statistician in order to assist in their review of the documents provided by Defendants in advance of filing their Motion for Class Certification and attending mediation. Boyamian Decl., ¶¶ 17, 24.

Accordingly, at the time of settlement, Class Counsel had a wealth of information upon which to make an informed decision about the appropriate value at which to settle the claims against Defendants. Particularly as Plaintiffs' Motion for Class Certification and Defendants' Motion for Partial Summary Judgment had been fully-briefed by the time of the mediation, the Parties had sufficient information and extensive knowledge about the strengths and weaknesses of each other's cases to allow for negotiation of a fair settlement.

///

11

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### C. Plaintiffs' and Defendants' Counsel Are Experienced, and the Settlement Is the Product of Serious, Informed, Non-Collusive and Good-Faith Negotiations.

This is not a case of collusion by counsel for the parties, but instead, a thoughtful, careful agreement to reach settlement of Class Members' claims by experienced counsel, operating at arms-length, who have weighed the strengths of the case and examined all issues and risks of litigation and endorse the proposed settlement.  The view of the attorneys actively conducting this litigation "is entitled to significant weight" in deciding whether to approve the settlement.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1980); *Fisher Bros. v. Cambridge Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa 1985).

Class Counsel are very experienced in class actions, including wage and hour class actions, and have been successful in obtaining large dollar settlements on behalf of a class of persons.  Declaration of Thomas W. Falvey ("Falvey Decl."), ¶ 3; Boyamian Decl., ¶ 4; Hartounian Decl., ¶¶ 8-11; Kizirian Decl., ¶ 4.  In addition, Class Counsel are very experienced in labor and employment law cases.  *Id*.  In light of this experience, Class Counsel are experienced and qualified to evaluate the Class claims and to evaluate settlement versus trial, on a fully informed basis, and to evaluate the viability of the defenses.

Class Counsel are convinced that this settlement is in the best interest of the Class based on the negotiations and a detailed knowledge of the issues present in these actions.  Boyamian Decl., ¶¶ 13-18. The length and risks of trial and other normal perils of litigation that may have impacted the value of the claims were all weighed in reaching the proposed settlement.  The affirmative defenses asserted by the Defendants, the prospect of a potential adverse summary judgment ruling or denial of class certification, the difficulties of complex litigation, the lengthy process of establishing specific damages and various delays and appeals, were also carefully considered by Class Counsel in agreeing to the proposed settlement.  Specifically, Class Counsel balanced the terms of the proposed settlement against the probable outcome of liability and the range of recovery at

trial. *Id*.

Counsel on both sides share the view that the Settlement is a fair and reasonable compromise, taking into consideration the complexities of the case, the state of the law and the uncertainties of class certification and litigation, and the excellent result for the Class. Given the risks inherent in this litigation and the defenses asserted, the Settlement is fair, adequate, reasonable and in the best interests of the class and one which supports a grant of final approval.

The prospect of settlement of the case was discussed over the course of mediation and follow-up conversations with the mediator. Negotiations were, at all times, adversarial, non-collusive, in good faith, and at arm's length. *Id*. Thus, the Settlement Agreement is the product of extensive and informed negotiations between counsel with substantial litigation experience, who are fully familiar with the legal and factual issues in this case, and who have experience litigating and settling complex and class action cases, including employment cases, facilitated by experienced and respected mediator Steven J. Serratore, Esq. *See Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, *at* *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Boyamian Decl., ¶¶ 13-18.

### D. The Class's Positive Response to the Settlement, to Which There Have Been No Objections and Minimal Opt-Outs, Strongly Supports Final Approval.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a very significant factor in determining whether to grant final approval. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks and citation omitted)); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990)

13
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

(approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

Here, no Class Member has objected to the settlement and less than 1% have opted out. Valdez Decl. ¶ 10.

In sum, all of the relevant factors demonstrate that this is a fair, adequate and reasonable settlement, and final approval is therefore appropriate.

### E. The Requested Attorneys' Fees, Costs and Services Awards Are Reasonable and Comparable to Those Routinely Awarded.

In the present case, Plaintiffs' counsel requests, and Defendants do not oppose, an award of attorneys' fees in the amount of one quarter of the gross settlement minus the employer's share of payroll taxes, as well as costs and enhancement awards to the named Plaintiffs. As detailed in Plaintiffs' concurrently filed Motion for Attorneys' Fees, the requested fees, costs and enhancement awards are well within the range typically awarded by courts in comparable cases, and are more than justified given the results achieved by Plaintiffs' counsel.

///

///

///

## V. CONCLUSION

The Parties have reached an agreement that disposes of the risks, costs and delay associated with further litigation, while allowing payments to class members on a fair and equitable basis. Defendants deny liability, but seek, through this settlement, to obtain closure to this litigation. No class member has objected to the settlement and less than 1% have opted out. As a result, Plaintiffs' respectfully request that the Court grant final approval to this class action settlement.

Dated:  February 19, 2019

Respectfully submitted,
BOYAMIAN LAW, INC.
LAW OFFICES OF THOMAS W. FALVEY
HARTOUNIAN LAW FIRM

By:   /s/ Armand R. Kizirian
      Armand R. Kizirian
      Attorneys for Plaintiffs Jennifer Pae, Alexandra Sheldon, and the Settlement Class